D. A. AVERY et al. v. CENTRAL BANK OF KANSAS CITY et al.; SALLIE M. THAYER, Administratrix of Estate of GEORGE E. THAYER, Appellant.

Division One, May 31, 1909.

1. **BREADTH OF PLEADINGS: Theory at Trial.** Where the pleadings at the trial were treated by all parties as sufficient to formulate, and direct the court's attention to, the real matter in controversy, they will be so treated on appeal, though they are not as specific as might be.

2. **BANK STOCK: Gift: Donee Charged With Donor's Conversion.** Bank stockholders who took stock by way of gift from their father when the bank was in distress, took it not as innocent purchasers, but subject to whatever right belongs to the estate of the cashier, who had been compelled to restore to the bank money wrongfully paid out to the father, to have the stock excluded from participation in the money so restored on final distribution among the stockholders of the bank's assets.

3. **CORPORATION: Distribution of Assets: Disputes Between Stockholders.** In winding up a corporation and making distribution among its stockholders of its net assets, the court should try a controversy between two of its stockholders relating to the amount each should have.

4. ——: ——: ——: **Restoring to Tortfeasors Money Paid In.** Where a non-resident stockholder of the bank was wrongfully paid $2,550 of the bank's money for stock held by the bank as collateral security for another's debt, and he and the cashier were joint tortfeasors in that wrongful payment, and the cashier was compelled by judgment to restore to the receiver of the bank the amount so converted, whereby the assets of the bank, whose creditors are satisfied, were increased, the court should not, on final distribution of the remaining corporate assets, tread back and settle alleged equities between the joint tortfeasors by returning to the cashier's estate the other's pro rata share of the money the cashier was compelled to restore to the bank on the other's account.

5. ——: ——: **Pro Rata Distribution.** On the dissolution of a bank, its debts being paid, each stockholder has a separate right to a distributive share pro rata of the remaining assets.

6. ——: ——: **Contribution Between Joint Tortfeasors.** There is no right of contribution between joint tortfeasors. So that if a non-resident and the cashier, both being stockholders, were joint tortfeasors in perverting the bank's funds, or in converting them to the non-resident, and the cashier by suit was compelled to restore, he cannot, on a final distribution, ask to be reimbursed to the amount his restoration swelled the distributive share of the non-resident. The bank had a right to sue one or both, and to recover all from either, and if either made satisfaction the law leaves him in the pickle it finds him.

7. ——: ——: ——: **Benefit of Other Joint Tortfeasors.** The rule of no contribution from joint tortfeasors applies between members of a corporation who conspired to defraud it; and between such members, although the shares of one joint wrongdoer may be benefited by an increment of gain from a judgment recovered in the name of the corporation against the other wrongdoer.

8. ———: ———: ———: **To Recover From Bank.** A suit by the cashier, to have, on final distribution of the bank's assets, returned to him the pro rata share of another stockholder of the money he. as a joint tortfeasor, was compelled by judgment to restore to the bank, is an endeavor in a roundabout way to enforce contribution from another joint tortfeasor. The other stockholder is not seeking to recover from him, for the recovery by the bank is an accomplished fact, and when the bank recovered the money it went to its corporate chest and by operation of law inured to the benefit of all its stockholders pro rata.

9. **JUDGMENT: Joint Tortfeasors: Recovering Back.** One joint tortfeasor cannot recover back his pro rata share of a judgment against him which he has paid, even if the other, who was not made a party, was equally guilty in the wrong.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*Douglass & Watson* for appellant.

The relief that Sallie M. Thayer is asking for in her petition is that the court leave the Sponables in the position that J. W. Sponable placed them, that is, that as he colluded and agreed with Thayer that this money should be taken out of the bank and appropriated by them in the manner shown in evidence, his sons, Fred T. and Frank, should not be paid a second time for such wrongful appropriation. The intervening petition asks that the amount of funds in the hands of the receiver going to the Sponables as stockholders out of and on account of the $5,100 and interest thereon be withheld from the Sponables, and be turned back to the intervening petitioner. We are not asking the court for a judgment against a joint wrongdoer, as the trial court seemed to think when this case was heard. The Sponables have not yet received the proportion asked for of the $5,100 and interest thereon which was found to have been wrongfully taken from the

treasury of the corporation by J. W. Sponable and Thayer. We are not asking the court to render a money judgment against the Sponables but we are asking the court to withhold from them any proportion of that fund which Thayer was adjudged to pay back, because in equity and good conscience they are not entitled to any part of the same. They assented to the transaction; they received their share of the booty, and now we are asking the court to leave them just where they placed themselves; and not to again award them money which they already received and for which Thayer has had to respond. They have already, through their father, received their one-half share of the $5,100 in January, 1890, and now as Thayer's estate has been made to refund that amount, which included what J. W. Sponable received, his assignees are asking the court to give them nearly one-half of that amount, notwithstanding their father was guilty of the very acts which made Thayer responsible to the Central Bank. This bank is a defunct concern and has no creditors, and therefore the only parties interested are the stockholders. 2 Clark & Marshall, Corp., pp. 1700, 1705; Morawetz, Priv. Corp., secs. 201, 262, 265; Clarke v. Coal Co., 86 Iowa 436; Parsons v. Joseph, 92 Ala. 405; Brown v. DeYoung, 47 N. E. 863; Robinson v. Smith, 3 Paige 222; Fougeray v. Cord, 50 N. J. Eq. 200; 3 Pomeroy, Eq. Jur., sec. 1090; Pratt v. Pratt, 33 Conn. 456.

. *Gage, Ladd & Small* for respondents.

(1) On the winding up of a corporation, its shareholders are entitled to participate in the distribution of its assets, after the payment of its debts, in proportion to the number of their shares. Taylor, Priv. Corp. (5 Ed.), sec. 788; Fisher v. Bank, 5 Gray 378; Smith v. Hurd, 12 Metc. 385; Hill v. Railroad, 41 Fed. 617; Plimpton v. Bigelow, 93 N. Y. 599; 5 Thomp. on

Corp., sec. 7042. (2) There is no right of contribution between joint wrongdoers. Much less may one of two joint wrongdoers enforce contribution against the children of his co-wrongdoer. Cooley on Torts (2 Ed.), pp. 166, 167, 171, 172; Kinkead's Com. on Torts, secs. 84, 85, 86; Peck v. Ellis, 2 Johns. Ch. 136; Bartle v. Coleman, 4 Peters 188; Bolt v. Rogers, 3 Paige Ch. 157; Pierson v. Thompson, 1 Edw. Ch. 218; Anderson v. Saylors, 3 Head (Tenn.) 551; Railroad v. James, 73 Tex. 19; Berkson v. Railroad, 144 Mo. 211. (3) There can be no contribution between members of a corporation who have conspired to defraud it. Gilbert v. Finch, 173 N. Y. 462; Miller v. Fenton, 11 Paige 18; Brewer v. Boston Theatre, 104 Mass. 399; Heath v. Railroad, 8 Blatchf. 347; Sharp v. Call, 69 Neb. 72; Boyer v. Bolender, 129 Pa. St. 324; 4 Thomp. on Corp., sec. 4582; Attorney-General v. Wilson, 1 Craig & P. 1. (4) A court will not enforce contribution between joint wrongdoers although its refusal to do so may result in a distinct profit and advantage to one of them. Fisher v. Bank, supra; Morawetz on Priv. Corp. (2 Ed.), secs. 262, 265; New Sombrers Phosphate Co. v. Erlanger, L. R. 5 Ch. Div. 113, L. R. 3 App. Cas. 18.

LAMM, P. J.—The Central Bank of Kansas City went into voluntary liquidation in 1891. Subsequently (while in process of winding up) its affairs were lifted from the hands of its officers and put in charge of Strother, receiver, in the suit of D. A. Avery *et al.* v. Central Bank *et al.* Geo. E. Thayer was elected cashier of the bank in 1888, was acting in that capacity when the bank closed its doors and afterwards had charge of its assets and business until said receivership. Presently Strother and the bank brought suit against Thayer, the object being to recover sundry items of the bank's funds wrongfully converted by Thayer. In one count of the petition it was charged

that he wrongfully and fraudulently took $2,550 out of the moneys and property of the bank, deposited it to his individual account and converted it to his own use under color of a pretended sale or transfer by him to the bank of twenty-five shares of his stock, all done without any knowledge of officers and stockholders. In another it is charged that one J. W. Sponable was the owner of twenty-five shares of stock and that Thayer, wrongfully and fraudulently colluding with Sponable, wrongfully took from the moneys of the bank the further sum of $2,550 and deposited the same to the credit of said Sponable, which sum said Sponable converted to his own use; that this was done under color of a pretended sale or transfer to the bank of said twenty-five shares of capital stock and that the wrongful conversion was without the knowledge of the officers and stockholders of the bank. These conversions are alleged to have been of the date of January 31, 1890. On tender of the stock back by the receiver, demand for the return of the purchase price and refusal to pay, the bank and receiver sued for that and other items.

The blocks of stock so transferred to the bank are known as the "Cowling stock." It seems that Cowling owed the bank, that he had been permitted to pledge to it fifty shares of its stock as collateral security for a loan; that Thayer paid the loan and became the owner of the stock, and thereafter all of it was cashed in at his instance and through his manipulation as cashier—the two (Thayer and Sponable) dividing the money share and share alike. Sponable was a non-resident of the State, was a stockholder in the bank and director but not an officer.

Such steps were taken and proceedings had in that case that judgment went against Thayer on the report of Judge Ball, referee, the judgment including the Cowling stock item. On appeal here, that judgment was affirmed (184 Mo. 61). Sponable died in

1899. Thayer died June 1, 1903. Sponable's estate is in process of administration in another State. Mrs. Thayer, appellant, is the administrator of Thayer's estate. As such administratrix she paid the judgment to the Central Bank.

Eventually the creditors of the bank were satisfied in full and Thayer's administratrix, on June 17, 1905, filed in the receivership case an intervening petition, therein alleging that the capital stock of the bank was $100,000, divided into shares of $100 each; that the estate of Thayer owned one hundred and sixty-five shares; that the estate of Sponable owned and owns $35,000 worth, par value, of the capital stock (i. e., 350 shares). The Cowling stock transaction is alleged in detail, the suit to recover on account of that transaction is alleged, and the substance of the petition is given, together with the result of the suit, viz., the recovery of $5,100, with six per cent thereon from January 31, 1890 (with other amounts not material here), and the payment in full of that judgment by Thayer's administratrix. That the receivership had reached the stage of final distribution among stockholders—the rights of creditors being out of the way. It is next charged that while Geo. E. Thayer was properly held responsible and mulcted for the whole amount wrongfully abstracted from the bank in the Cowling matter, yet the recovery against him included the share wrongfully received by Sponable; that, as to that item, Sponable participated in the unlawful manipulation and conversion of the funds, so recovered back; that it would work a great wrong to now permit the estate of Sponable as holder of thirty-five per cent of the capital stock of the bank to receive thirty-five per cent of the proceeds of the judgment paid in by Thayer's administratrix; that the estate of Sponable is not entitled in law or equity to receive a pro rata share of the judgment and should be ex-

cluded from any distributive share in final distribution among stockholders—concluding as follows:

"Wherefore, your petitioner prays the court to state an account between said corporation and A. R. Strother, receiver of said bank, and each of its stockholders, as to the amounts which will be due each of them, respectively, on a division of the assets of said corporation, and in this accounting deduct a thirty-five one-hundredths part of said fund of $5,100 and interest thereon since January 30, 1890, on account of the holdings of said Sponable estate for the reasons aforesaid, and also deducting the pro rata share due on the one hundred and sixty-five shares of the capital stock now held by said George E. Thayer's estate, and that this court frame a decree, whereby the money heretofore paid to the corporation and A. R. Strother, receiver, on said judgment, shall be prorated among the shareholders as follows, that is, 48,500—100 part thereof divided among the stockholders who did not assent to said transaction in said $5,100 and interest due thereon since January 30, 1890, in accordance with their respective interests, and that said J. W. Sponable's estate be entirely excluded from participation in any manner whatever, in said $5,100 and interest due thereon, and that your petitioner be decreed to be entitled to $51,500-100, part of said fund, being the balance thereof, that is, the pro rata part that would otherwise have gone to said Sponable in his estate, but for the reason hereinbefore mentioned, and also including the pro rata part on account of the Thayer stock now held by his said estate; and your petitioner prays the court for a decree that said plaintiff bank and its receiver state an account of amount of stock held by each shareholder, and ascertain the amount due each shareholder in said $5,100 and interest thereon, that the court ascertain the exact amount due the stockholders who did not assent to said transaction,

and enter a decree for same, and that the amount due said Sponable's estate be paid to this petitioner, and for such other and further relief as to the court seeming just and proper in the premises.''

The Sponable estate owned only one share of stock. Sponable had two sons, Frank W. and Fred T. Fred on July 26, 1905, filed his petition in the receivership case for an order of distribution claiming to own 198½ shares, evidenced by two certificates which he exhibited. On the same date Frank W. filed a similar petition claiming to own one hundred and sixty shares evidenced by two certificates which he exhibited.

On August 19, 1905, the court made an order on the receiver to publish a notice directed to all creditors and stockholders to present to the court and receiver their claims against the bank and its funds on or before the third day of the next October term and the receiver was ordered to report such claims to the court for its action.

Subsequently the receiver made such report showing (*inter alia*) that the stock involved in the Cowling transaction was in his charge; that the Thayer estate claimed one hundred and sixty-five shares of stock (not including the Cowling stock therein); that Frank Sponable claimed one hundred and sixty shares; that Fred claimed 198½ shares; that the estate of J. W. Sponable owned one share but made no claim.

On the twenty-fourth of February, 1906, a hearing was had on the various petitions of stockholders and others for allowances and orders of distribution of moneys in the hands of the receiver, none concerning us but that of Thayer's administratrix and those of Frank and Fred Sponable.

To sustain the issues on the part of the administratrix, the pleadings in the case of Strother and the bank against Thayer, the report of the referee and the judgment of the circuit court of Jackson county were allowed in evidence over the objection of counsel

for the two Sponables that neither of them, nor was J. W. Sponable, a party to that suit nor bound by anything done or adjudged therein. For our purpose it will do to say that the petition in that case charged that Sponable wrongfully participated in the Cowling stock transaction in colluding and conspiring 'with Thayer to bring it about and in sharing in the illegal gains of it; that the referee found and reported the charges sustained, in that Thayer bought Cowling's stock and paid the purchase price to the bank by Cowling's direction to be applied on his indebtedness there; that "at that time or afterwards" twenty-five shares of the Cowling stock were transferred by Thayer to J. W. Sponable; that Thayer and Sponable held the stock for a year and collected a dividend on it and that finally the money Thayer had originally paid for the stock was by his direction abstracted from the bank's funds and divided between him and Sponable by passing $2,550 to the credit of each. As already said that report was approved and the judgment rendered below was subsequently affirmed above.

On material points the oral testimony added something of value to the record proofs. It was shown orally that at the date of the wrongful conversion in the Cowling stock matter, Fred T. Sponable was a bookkeeper in the bank and possibly a director, that the individual deposit slips evidencing a credit to J. W. Sponable and Geo. E. Thayer on account of the Cowling stock were in his handwriting and were made at the instance of Thayer. We take it the book entries on these items 'were in Fred T. Sponable's handwriting. At one time Fred T. Sponable was assistant cashier but the date is uncertain. We think it was after the conversion. That Thayer's was the master mind directing the affairs of the bank is clearly shown. There is some evidence that Frank W. Sponable held a minor position as bookkeeper, but we cannot make out when that was. It is shown that the two Spon-

able boys got their stock from their father as gifts at sundry times. The record is quite dark as to the date of these gifts. It seems the elder Sponable held several blocks of stock, evidenced by separate certificates, and that he gave these certificates to his son, one at a time at different dates. The evidence tends to show that one or more of these certificates was turned over after the bank closed its doors—possibly all of them, but this would arise more by way of inference than by positive proof.

As near as we can make out there are in the receiver's hands $20,000, more or less, for distribution among all the stockholders. Of that sum, less than one-half is represented by the proceeds of the Thayer judgment. Of the total capital stock of the bank nearly one-half was held by stockholders concededly innocent of any participation in the Cowling stock manipulation and such innocent stockholders are concededly entitled to have their pro rata share of that judgment on distribution. No one is questioning the right of the Thayer estate to participate in the final distribution to the extent of its pro rata share of gain to accrue to its stock through that judgment.

On these facts, concessions and hypotheses, how the "amount in dispute" is sufficient to give the Supreme Court jurisdiction of this case is not clear to us. The question is not discussed in briefs, nor was it argued at our bar, nor was inquiry made by the court during oral argument. We will assume that learned counsel are right in assuming we have jurisdiction, though such assumption would be inconvenient as a precedent and is indulged now only by way of grace and because the record is cloudy on the point.

The court below disallowed the contentions of the administratrix and refused to deduct from the shares of the two Sponable boys the pro rata share of the

judgment, paid by Thayer's administratrix accruing on the stock, and refused to return it to her as administratrix. It did, however, add to her one hundred and sixty-five shares of stock the fifty Cowling shares, then held by the receiver. Thus allowing to the Thayer estate two hundred and fifteen shares upon which it was entitled to distribution, treating the Cowling stock as equitably Thayer's.

From such judgment and order the administratrix appealed.

Does the judgment accord with equity? Is it in contravention of the law? We think it should be affirmed. This, because:

I.   While the intervening petition of appellant states that the Sponable estate owned three hundred and fifty shares of stock and says nothing about stock held by Frank or Fred Sponable, and while in strictness it was leveled at (1) keeping the Sponable estate by name from sharing in the Thayer judgment on account of stock ownership and (2) recovering the Sponable pro rata share back, and while in truth and in fact the Sponable estate owned only one share and made and makes no claim on that one share, yet the hearing proceeded on the theory that the petitions of Fred and Frank Sponable asserted a claim to the identical stock referred to in appellant's intervening petition. The whole matter was well treated as an omnibus proceeding leading up to an adjustment of all claims and to final distribution. So that, the entire matter of the remaining assets of the defunct banking corporation was held in judgment. The pleadings were treated as sufficient to formulate, and direct the court's attention to, the real controversy. Such being the theory below, we disallow the suggestion made by learned counsel for the Sponables, in effect that the averments of the petition (absent amendment) were insufficient to present to the court any issue as to

the shares of Fred and Frank Sponable. This, because if their right to participate in the distribution was not questioned by the intervening petition, yet they turn up holding the shares which the intervening petitioner assumed belonged to the Sponable estate and they, by their own petition, bring their right of distribution before the court for its order and direction.

II. The Sponables objected to admitting in evidence the court files and judgment in the Thayer case. Their objection was overruled and it is suggested it should have been sustained. Further, that the presence of that improperly admitted proof is the very foundation upon which appellant has built her theory that the elder Sponable participated in the wrongful conversion of $5,100 of the bank's money. But we do not read the record quite that way. There was other testimony to the effect that the bank took up the Cowling stock in equal parts from J. W. Sponable and Geo. E. Thayer and paid them individually therefor on the same day. There was testimony, we think, tending to show a joint and unlawful venture between them in that behalf. But the matter need not be pursued, nor need we consider the objection to the introduction of the files and judgment, since the judgment in the case at bar was in favor of the Sponables and they filed no bill of exceptions and took no appeal.

III. As the Sponables hold their stock merely by way of gift from their father when the bank was in distress, we think they take and hold it (not as innocent purchasers, but) subject to whatever right the Thayer estate has (if any) to have that stock excluded from participation in the Thayer judgment on final distribution among stockholders and to have a return made of the Sponable share. In other words, the Sponable boys stand in the shoes of their father. We

do not base that conclusion to any controlling extent on their knowledge of the joint wrong conduct of their father and Mr. Thayer. Presumably they were in the bank, in some sense, as representatives of their father's large holding of stock, he living elsewhere. It is hardly conceivable they knew nothing of the Cowling stock transaction when their father's interests were at stake and the details passed through their hands in bookkeeping. The evidence points to the fact that Fred Sponable was somewhat conversant with the matter, but there is no proof either of them was consulted or called upon to approve or disapprove it. But this is merely by way of argument. We prefer to let our ruling rest on the proposition that their father's gift of the stock left it as if he yet held it and gave them his rights—neither more nor less; that they were not bona-fide purchasers and held subject to any equities existing in favor of the bank, or in favor of other stockholders after the corporation was in process of being dissolved and final distribution among shareholders was pending and to be decreed.

IV. It is argued that a court in winding up a corporation and making distribution among shareholders ought not to try controversies involving private disputes between them relating to stock. But why not when the controversy relates to the distribution itself, and when distribution ought not to go (because it cannot proceed justly) until the controversy is determined? We are pointed to no case sustaining counsel, and if we were, we would doubt its soundness. Good sense is of the very essence of administering law, and, when on final distribution pending, shareholder A says that shareholder B ought not to share pro rata in a certain part of a fund held in the hollow of the hand of the court for the very purpose of distribution, but that B's part comes to A, good sense points that the controversy should be settled out of hand and the

road cleared for final distribution. The court holds the *res,* and should portion it out justly or not let go of it at all. Especially so where issues are framed and submitted to the court without objection, as here.

V. With preliminary questions at rest, we face the main proposition in the case, *viz.*: Conceding that the elder Sponable was a joint wrongdoer; conceding that the entire satisfaction for that joint wrong came from Thayer; conceding that the assets of the wronged corporation were increased by the amount of that satisfaction, then on final distribution should the court tread back and readjust alleged equities between joint tortfeasors, both being shareholders in the corporation, and both claiming to share in the final distribution of the corporate property?

(a) It cannot be denied that every shareholder, whether in the distribution of profits or in the winding up of the corporation, is entitled to participate in proportion to the number of shares held by him. [Taylor on Private Corps. (5 Ed.), sec. 788.] Each shareholder is entitled to an aliquot part of the proceeds of the capital on winding up. [Fisher v. Essex Bank, 5 Gray l. c. 378.] In Smith v. Hurd, 12 Metc. l. c. 385, it was ruled that stockholders in banks have a separate right to a distributive share of the capital stock if any remain when the charter of the bank is at an end, and its debts paid. In Hill v. Railroad, 41 Fed. l. c. 617, it was ruled that after the payment of debts, corporate assets belong to and must be distributed equally and ratably among the stockholders therein as the beneficial owners thereof.

We find no contradiction to the proposition that in liquidation stockholders receive dividends pro rata after payment of debts.

(b) With the foregoing proposition established, we come to another equally well settled, *viz.*: That there is no right of contribution between joint

wrongdoers.   A person wronged by several may sue one, some, or all and get full reparation.   He may recover against all and then (in the absence of statute.) exact satisfaction of one.   If one make full satisfaction for the joint wrong of several, the law leaves him in the pickle it finds him.

The right doctrine with the reason of it is put by Cooley (Cooley on Torts (3 Ed.), p. 261) : "Whoever, by his pleadings in any court of justice, avows that he has been engaged with others in an unlawful action, or has concerted with them an unlawful enterprise, and that in arranging for or carrying it out he has been unfairly treated by his associates, or has suffered an injustice which they should redress, will be met by the refusal of the court to look any further than his complaint, which it will at once order dismissed.   The following reasons may be assigned for this action:   1. The discouragement of all illegal transactions by distinctly apprising every person who engages in them that the risk he incurs is not merely of being compelled to share with the others the loss that may follow; for this, in many cases, would be insignificant, and in all cases would be small in proportion to the size and formidable character of the combination.   He is, therefore, given to understand that whoever takes part in an illegal transaction must do so under a responsibility only measured by the whole extent of the injury or loss; an understanding very well calculated to make men to hesitate who, under a different rule, would be disposed to give full scope to evil inclinations."   Other reasons are assigned by the learned author (q. v.).

After pointing out that the civil law denied contribution and that the French law was more indulgent, Chancellor KENT, in Peck v. Ellis, 2 Johns. Ch. 138, says: "I doubt much of the wisdom of this indulgence. Public policy speaks loudly against it.   There would be no safety to property if a large combination of trespassers were entitled to the assistance of courts of

justice in the apportionment of the damage. The knowledge that each individual is responsible for the whole constitutes a great check. Where the contribution is asked for between parties jointly convicted of fraud, I should then, at least, prefer the doctrine of the civil law, and the sanction it has received from the stern, unaccommodating morality of Lord Kenyon. It appears to me more congenial with the spirit and genius of a court of equity, not to lend an encouraging aid to parties to apportion between them by a nice and calculating hand the penalty of their injustice."

In speaking to the point, Mr. Justice Baldwin, for the Supreme Court of the United States, in Bartle v. Coleman, 4 Peters l. c. 188, says:. "If either has sustained a loss by the bad faith of a *particeps criminis*, it is but a just infliction for premeditated and deeply practiced fraud, which, when detected, deprives him of anticipated profits, or subjects him to unexpected losses. He must not expect that a judicial tribunal will degrade itself, by an exertion of its powers, by shifting the loss from the one to the other; or to equalize the benefits or burdens which may have resulted by the violation of every principle of morals and of laws."

In Pierson v. Thompson, 1 Edw. Ch. l. c. 218, it is said by Vice-Chancellor McCoun: "The rule holds in equity, as well as at law, that there shall be no right of contribution between joint wrongdoers. This rule is founded in public policy and intended to check the disposition to combine in committing wrongs; by declaring that each individual concerned is liable to bear the whole loss or damage which may be occasioned."

It is a maxim of the law that no man can make his own misconduct the ground for an action in his own favor. Another is that where the fault is mutual the law will leave the case as it finds it. It is a cardinal maxim of equity that he who seeks equity must come

into court with clean hands. It is against public policy to adjust equities between wrongdoers or to permit courts, maintained by the common purse, to fritter away time (mortgaged to justice) indemnifying those suffering loss by reason of violation of law.

If it be sought to bring the case at bar within any exception to the foregoing general rules it will be found that Thayer was deeper in the mud than Sponable in the mire. Thayer's hand seems to have been the guiding hand in the Cowling stock matter. His was the managing mind. So, he was the managing officer of the bank. He represented both sides and dealt with himself in cashing that stock, and, on this record, Sponable acted an inferior role.

Nor does the case of Hobbs v. Boatright, 195 Mo. 693, sustain the position of appellant's learned counsel. That case decides that the rule that courts will not aid a plaintiff who is *in pari delicto* with the defendant, is not one of universal application and will not be applied when to withhold relief would offend public morals to a greater extent than to grant it. But the case at bar does not lie within the reason of the exception maintained in the Hobbs case. Nor within the exception allowed in cases where the suing plaintiff is not in equal fault with defendant; for if there be an inequality in the degree of fault between Thayer and Sponable the difference is unmistakably in favor of the latter.

(c) The rule of no contribution applies between members of a corporation who have conspired to defraud it. We need not discuss the proposition for it is merely an application of the general doctrine that contribution is not enforced between wrongdoers (see authorities cited in respondent's brief).

(d) And the rule of no contribution applies as between members of a corporation although the shares of one joint wrongdoer may be benefited by an increment of gain from a judgment recovered in the name

of the corporation against a joint tortfeasor. In this case the corporation sued on behalf of the corporate entity. It recovered compensation for the entire wrong from Thayer, a shareholder. The proceeds of the judgment went into the corporate chest. In so far as that recovery swelled the corporate property it necessarily inured to the benefit of all the shareholders. By virtue of their stock ownership, it increased the value of the stock of both Thayer and Sponable. The law is not to blame for this result. The wrongdoer must carry all the burden incident to his 'wrong doing and if he happens to be a shareholder in a corporation and conspires with other shareholders to injure it, he has no serious cause of complaint if, by virtue of the relation that corporate stock bears to corporate assets, the reparation exacted of him may inure to the benefit of shares owned by his joint wrongdoer.

Says Morawetz (Morawetz on Private Corp. (2 Ed.), secs. 262-265):

"The benefit of an action brought by a corporation *necessarily results to all the shareholders equally, even where a portion of them were parties to the wrong,* or have, by acquiescence, forfeited their equitable claims to redress. And this result is not, as a rule, unfair. The only possible method of working out the rights of the parties in a case of this kind is to preserve the fiction of a separate corporate entity, and to enforce the collective and individual rights and obligations of the shareholders separately.

"It is clear, therefore, that the acquiescence of a shareholder in a violation of the corporate rights or even a participation in the wrong, *would not deprive him of his interest in the cause of action belonging to the corporation as an entity.* He would have a share in the benefits of a recovery, even although his personal liability should be thereby increased. . . .

"It has been pointed out that the estate of a corporation is to be treated as that of a continuing institu-

tion, irrespective of the members at any particular time composing it. Each share represents an interest in the entire concern, and the several holders are entitled to equal rights irrespective of the time when they acquired their shares. Causes of action belonging to the corporation increase the value of the corporate estate, *and must be treated like any other assets; when enforced, they inure to the benefit of all the shareholders without distinction.* It is plain, therefore, that a shareholder has an interest in all causes of action belonging to the corporation, whether they arose before or after he purchased his shares.''

A very discriminating and just English judge, Sir GEORGE JESSEL, Master of the Rolls, in a case reported in L. R. 5 Ch. Div. 1. c. 113-4 (New Sombrero Phosphate Co. v. Erlanger,—on appeal, affirmed in the House of Lords; L. R. 3 App. Cas. 1218), considered a proposition germane here. The suit was by a company to rescind a contract made with a syndicate, some of the members of which were stockholders of the company and parties to the fraud charged, and to recover back money paid. A defense was made that to allow recovery would benefit the shares of stockholders participating in the conspiracy. Speaking to the point, Sir GEORGE said: ''It was said, first of all, that it would be doing great injustice, that if we rescind the contract and order the return of this property, which appears to be, as I said before, a valuable property, though not worth so much as 110,000 pounds sterling, we shall thereby enable the company to obtain more than the value of the property, and divide it not only amongst those shareholders who knew nothing about the matter, but also amongst several shareholders who knew all about it. It is said that is not doing justice, and that the suit cannot be maintained in this form, because it will not do justice. But that argument goes too far, because it would apply to a case of the grossest fraud in every instance in which one

or more of the actual shareholders of a company took part in that fraud. If the argument were once allowed to prevail, it would only be necessary to corrupt one single shareholder in order to prevent a company from ever setting the contract aside. It may be said you give to the shareholder, who 'was a party to the fraud, a profit, because he will take it in respect of his shares, and since as between co-conspirators, there is no contribution, therefore his brother conspirators who are made liable for the fraud, cannot make him repay his proportion. But the doctrine of this court has never been to hold its hand and avoid doing justice in favor of the innocent, because it cannot apportion the punishment fully amongst the guilty. A dozen parties to a fraud may be defendants, and one decree or judgment go against all, and if it is a fraud of such a character that none of them can bring an action for contribution, the plaintiff may at his will and pleasure enforce that judgment against one of them, and perhaps pass over the most guilty of them; still there is no remedy as between those who cannot commit the fraud. It is one of the punishments of fraud that there is no such remedy, and that a guilty party, though not the most guilty, may suffer the greatest amount of punishment. It is one of the deterrents to men to prevent their committing fraud. I do not see any ground of natural justice or any ground of policy which would prevent the court rescinding the contract in the case I have put."

We can add nothing of our own by prolonging this discussion, or by restating doctrines announced by Mr. Morawetz and Sir GEORGE JESSEL in the foregoing excerpts—doctrines acceptable to us.

A case is relied on by learned counsel for appellant (Brown v. DeYoung, 167 Ill. 549), but that case is no authority under the facts of this record. There certain stockholders brought suit against an officer

and stockholder of the corporation to restore to the corporate estate certain amounts wrongfully abstracted. One of the plaintiffs was shown to have participated in the wrongs done by the defendant. The case proceeds on the theory that if recovery were had on behalf of the corporation and the moneys recovered once went into the corporate estate, there could be no contribution between wrongdoers. Accordingly, the court decreed a recovery to the innocent stockholders who were plaintiffs in their individual capacities, and cut out the participating wrongdoer who joined as plaintiff. This, in order to avoid permitting the amount recovered to pass into the corporate chest. The case rides off on a peculiar state of facts. We are not called upon to follow it or refuse to follow it, because in this case there was no suit by innocent shareholders. Here there could have been no recovery on behalf of such shareholders in their individual capacities. The amount recovered actually went into the corporate estate, and, necessarily, on liquidation and final distribution, as a matter of law was bound to increase the stock dividend of all shareholders.

VI. It is argued that the case in hand is not one to enforce contribution between joint wrongdoers. That such view of it is putting the cart before the horse; that, at bottom, the case is simply one to *prevent* recovery by a joint wrongdoer. But we think counsel inadvertently argue ill in that behalf. From whom are the Sponables seeking to recover? From the Thayer estate? Not at all. The "recovery" from that estate is a fact accomplished—is water that has passed the mill and can turn the wheel no more. When the corporation in its own proper person collected the judgment and put the proceeds in its corporate chest, instantly, by operation of law, those proceeds inured to the benefit of corporate creditors, and (when they were out of the way, as here) inured to

the benefit of all the corporate shareholders. The legal and equitable title to the money, in such condition of things, flows from and is evidenced by the stock itself on distribution. Disguise the claim as you may, look at it from any point you will, the claim of the intervening petitioner is but trying to enforce contribution against a joint wrongdoer in a round-about way.

VII. But there is another reason why the court could not equitably grant the relief prayed by the intervening petitioner. The object of her petition was to recover back a pro rata share of the judgment. On what theory could she recover back what the law had adjudged must be paid by her intestate, and which was so paid? That matter was *res adjudicata.* If we held that the Sponable stock could not share in the judgment, we think we should still be inclined to hold that it would go to innocent stockholders and not be put back in the pocket out of which it was taken by the just hand of the law.

The judgment was right. Let it be affirmed. All concur, except *Valliant, J.,* who is absent.