## OHIO VALLEY BANK et al. v. GREENEBAUM SONS BANK & TRUST CO.

(Circuit Court of Appeals, Fourth Circuit. January 13, 1926.)

No. 2416.

1. **Jury ⊙—34(1)—In deceit action, entry of judgment against separate defendants for aggregate of separate verdicts is unauthorized (Const. Amend. 7).**

In action for deceit against bank and officer thereof, where jury returned separate verdicts in sums aggregating approximately amount sued for, court, under Const. Amend. 7, could not "interpret" verdict as finding of joint liability and enter judgment against defendants jointly for whole amount, nor could it do so on theory that joint liability was established by undisputed evidence.

2. **Jury ⊙—34(1).**

Where amount found against defendant is essence of verdict, it cannot be stricken out in rendering judgment without destroying verdict.

3. **Appeal and error ⊙—1070(1)—Trial ⊙—328 —Receipt of separate verdicts, in action on alleged joint liability, held error but not prejudicial to defendants not entitled to be sued jointly.**

In action against bank and officer thereof on alleged joint liability for deceit, it was error for court to receive separate verdicts apportioning liability between defendants but not prejudicial to defendants who were not entitled to be sued jointly.

4. **Torts ⊙—22.**

Joint tort-feasors have no right to determine whether they will be sued jointly or severally.

5. **Appeal and error ⊙—1170(1).**

Judgment will not be reversed for error not prejudicial to appellant, particularly in view of Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

6. **Appeal and error ⊙—1070(1)—Receipt of verdicts apportioning liability for deceit between defendants jointly sued held not prejudicial to right of contribution of defendant primarily liable (Barnes' W. Va. Code 1923, c. 136, § 8).**

Where bank officer, primarily liable for deceit, was sued jointly with bank, receipt of separate verdicts apportioning liability between defendants was not as to him prejudicial error as defeating his right to contribution, under Barnes' W. Va. Code 1923, c. 136, § 8, in cases of joint judgments ex delicto, since, being primarily liable, he was not in any event entitled to contribution.

7. **Appeal and error ⊙—1070(1)—Receipt of separate verdicts apportioning liability between defendants jointly sued for deceit held not prejudicial to right to contribution (Barnes' W. Va. Code 1923, c. 136, § 8).**

In action against bank and officer thereof for deceit, receipt of separate verdicts apportioning bank's liability in sum in which it had been benefited, which was less than one-half of aggregate recovery, held not prejudicial to its right, under Barnes' W. Va. Code 1923, c. 136, § 8, to contribution in case of joint judgment ex delicto.

8. **Fraud ⊙—65(1)—Instruction correcting misstatements in argument of counsel and explaining difference between ownership of corporation's stock and ownership of its property held proper.**

In action for deceit in representations as to financial worth of company, where defendant's counsel had argued that representations that company owned plant of another corporation were true, whereas it only owned a large majority of stock of such corporation, it was not error for court to explain difference between ownership of stock of corporation and of its plant.

Cross-Writs of Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action by the Greenebaum Sons Bank & Trust Company against the Ohio Valley Bank and M. J. Ferguson. Judgment for plaintiff against defendants severally, and both plaintiff and defendants bring error. Affirmed.

John H. Holt, of Huntington, W. Va. (Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for plaintiffs in error and cross-defendants in error.

Edward R. Johnston, of Chicago, Ill. (Brown, Jackson & Knight, of Charleston, W. Va., and Newman, Poppenhusen, Stern & Johnston, and Henry Jackson Darby, all of Chicago, Ill., on the brief), for defendant in error and cross-plaintiff in error.

Before ROSE and PARKER, Circuit Judges, and WATKINS, District Judge.

PARKER, Circuit Judge. This case comes before us on cross-writs of error. Greenebaum Sons Bank & Trust Company, a corporation of Chicago, was plaintiff in the District Court, and the Ohio Valley Bank of Huntington, W. Va., and M. J. Ferguson, its vice president, were defendants. For convenience, the parties will be designated in this opinion according to the positions which they occupied in the court below. The action was one to recover damages against both defendants for deceit alleged to have been practiced. by them upon the plaintiff. The jury returned a verdict for $26,019.31 in favor of the plaintiff and against the defendant Ohio Valley Bank and for $28,281.31 in favor of plaintiff and against the defendant Ferguson. The plaintiff thereupon moved the court to "interpret" the verdict and render judgment against the defendants jointly for the aggregate of the amounts awarded, or $54,300.68, which motion was denied, and the exception to the denial forms the basis of plaintiff's writ of error. The defendants moved to set aside the verdict on the ground that the attempted apportionment of damages was beyond the powers of the jury and was in effect a mistrial. The court denied this motion and entered judgment against the defendants in accordance with the verdict, and the defendants excepted to the denial of their motion and to the judgment as entered. These exceptions, and an exception to a portion of the charge dealing with the falsity of one of the representations relied on, constitute the basis of the writ of error of defendants.

The plaintiff is engaged in the banking business in Chicago. In the latter part of May, 1921, it was approached by one Shirer, president of the Star Car & Foundry Company of Huntington, W. Va., who stated that in behalf of his corporation he desired to open an account with plaintiff and secure a loan of considerable size. Plaintiff's president requested that Shirer furnish him the names of persons from whom he could make inquiry regarding the assets and solvency of the corporation, and Shirer referred him to the defendant Ohio Valley Bank and several other banks in Huntington and nearby towns. Plaintiff wrote to all of these banks asking information; and with the exception of the defendant Ohio Valley Bank, they all replied that they were unable to furnish the information requested. The letter to · the Ohio Valley Bank, however, came into the hands of its senior vice president, the defendant Ferguson, who in addition to being vice president of the bank was also treasurer

and a director of the Star Car & Foundry Company. In answer to this letter Ferguson in the name of the defendant bank sent a telegram to plaintiff stating that the Star Car & Foundry Company was regarded as worth $800,000 to $1,000,000; that it owned two plants both unincumbered and was a safe risk. On the same date he wrote a letter to plaintiff, signed by him as vice president of the bank, in which he stated, among other things, that the ·company owned two plants free from incumbrance, one at New Lexington, Ohio, and the other at Huntington; that it had issued preferred stock amounting to $419,700 and 45,000 shares of non-par common stock shown by its statement to be worth $20 per share; that the company had machinery and equipment in both plants and a large amount of material on hand consisting of steel, lumber, and finished mine car wheels; that he did not know just what the company owed, but in comparison with the assets this was a small amount; and that the Ohio Valley Bank looked upon the paper of the company as a perfectly safe risk, not only because of the property owned by the company, but also because of the fact that the management was in the hands of experienced men. Relying upon these representations, plaintiffs loaned to the Star Car & Foundry Company sums of money aggregating $80,000.

The evidence introduced by the plaintiff showed that at the time of the making of these representations the Star Car & Foundry Company was not a safe credit risk as represented, but was badly embarrassed financially; that its account at the Ohio Valley Bank was almost constantly overdrawn in large amounts; that it owed to the bank, in addition to the overdraft, notes aggregating $41,500; and that in order to raise funds it had been compelled to resort to the expedient of assigning accounts to a credit company, all of which circumstances were known to defendant Ferguson, who, as stated above, occupied the dual position of treasurer of the Star Car & Foundry Company and senior vice president and manager of the bank. It was also shown that the Star Car & Foundry Company did not in fact own a plant at New Lexington, Ohio; that the acquisition of the plant of the Star Manufacturing Company at that place had been authorized by the stockholders and directors of the Star Car & Foundry Company, and 69.6 per cent. of its preferred and 86.7 per cent. of its common stock had been acquired; but that the two corporations had not been consolidated, and that the assets of the Star

Manufacturing Company had not been transferred to the Star Car & Foundry Company, but remained in its own name liable for its debts, to which they were applied when it was adjudged bankrupt a few months later.

It appeared that Shirer's application to plaintiff for a loan was made pursuant to a request from Ferguson that he negotiate a loan in Chicago so as to take up the overdraft and a part of the indebtedness at the bank. He told Ferguson about the application upon his return from Chicago, and was in consultation with him about the matter from time to time until the loan was granted. Before it was closed, he gave Ferguson checks against the fund to pay the overdraft in the bank and one of the notes held by it. Ferguson did not disclose to plaintiff his relationship to the Star Car & Foundry Company, its indebtedness to the defendant bank, or the fact that it was experiencing financial difficulties and was being compelled to assign its accounts to raise funds with which to operate.

With respect to the damages sustained by plaintiff, it was shown that the Star Car & Foundry Company was adjudged bankrupt on March 22, 1922, and that at the time nothing had been paid on the $80,000 loan. Plaintiff, however, credited against the loan a balance of $611.73 on checking account; and dividends received and expected from the bankrupt estate reduced the balance of the indebtedness with interest to $54,295.68. It was undisputed that the defendant bank received from the proceeds of the loan the sum of $21,618.55 in payment of overdraft and note, and that this with interest to the trial amounted to approximately $26,019.31, which was the amount of the verdict rendered against it. The aggregate of the amounts awarded against the defendants, $54,300.68, is exactly $5 more than the balance admittedly due plaintiff on the $80,000 loan, and this difference was evidently a mere error in calculation on the part of the jury; their manifest intention being to award plaintiff a sum equal to the loss which it had sustained.

With respect to the alleged error in the charge, it appears that one of counsel for defendants had argued to the jury that the statement in the letter of June 6th, to the effect that the Star Car & Foundry Company owned the plant at New Lexington, Ohio, was a true statement. In his general charge the trial judge referred to this argument and stated that the evidence showed that while the Star Car & Foundry Company owned 87 per cent. of the common stock of the Star

Manufacturing Company and a large percentage of the preferred stock, it did not own the plant of that corporation. And he then proceeded to explain the difference between the ownership of the plant and the ownership of stock, showing how in the case of dissolution or receivership the debts of the corporation would be paid out of its assets before anything would be distributed on the stock.

[1, 2] On plaintiff's writ of error it is argued that there was no question as to the amount of damages sustained by the plaintiff, and no serious controversy that, if defendants were liable to plaintiff at all, they were jointly liable for the full amount of plaintiff's damages; that the sole question in the case was whether the fraud was perpetrated as alleged; and that, the jury having answered an issue as to this against each defendant, the court should enter judgment against both for the aggregate amount of damages awarded, ignoring the attempted apportionment by the jury. The trouble with this argument is that it ignores the fact that the jury fixed the extent of the liability of each defendant in the finding which established his liability. It is not a case where the verdict, after establishing joint liability for the entire damages, seeks to apportion the liability between the defendants. In such cases there is authority for the position that the court may ignore the apportionment as surplusage and enter judgment against the defendants jointly on that part of the verdict establishing joint liability. Lake Erie & W. R. Co. v. Halleck, 136 N. E. 39, 78 Ind. App. 495; Washington Market Co. v. Clagett, 19 App. D. C. 12; Schoat v. Marriott, 194 N. Y. S. 849, 119 Misc. Rep. 92. But here the amount found against each defendant is the very essence of the verdict, and the amount awarded cannot be stricken out without destroying the verdict in its entirety.

It is said, however, that the verdict establishes the fact of liability as to each defendant and that the court should enter judgment for $55,300.68, the total of the damages awarded, as the fact of joint liability therefor is established by the undisputed evidence in the case. This in effect would be to set aside the verdict of the jury and substitute for it the judgment of the court in establishing the extent of liability and would result in rendering judgment against each defendant in a sum greatly in excess of the verdict against that defendant as found by the jury. This cannot be done. Constitution of United States, Amendment 7. In Hodges v. Easton, 1 S. Ct. 307, 106 U. S. 408, 27 L. Ed. 169,

certain questions covering only a part of the material issues of fact were propounded to the jury, who returned them with the answers thereto as a special verdict. The judgment against the defendant recited that it was rendered upon the special verdict "and facts conceded or not disputed" upon the trial. In reversing the judgment the court said: "The record discloses that the jury determined a part of the facts, while other facts, upon which the final judgment was rested, were found by the court to have been conceded or not disputed. * * * We then have a case at law, which the jury were sworn to try, determined, as to certain material facts, by the court alone, without a waiver of jury trial as to such facts. It was the province of the jury to pass upon the issues of fact, and the right of the defendants to have this done was secured by the Constitution of the United States. They might have waived that right, but it could not be taken away by the court. Upon the trial, if all the facts essential to a recovery were undisputed, or if they so conclusively established the cause of action as to have authorized the withdrawal of the case altogether from the jury, by a peremptory instruction to find for plaintiffs, it would still have been necessary that the jury make its verdict, albeit in conformity with the order of the court. The court could not, consistently with the constitutional right of trial by jury, submit a part of the facts to the jury, and, itself, determine the remainder without a waiver by the defendant of a verdict by the jury." Hodges v. Easton, 1 S. Ct. 310, 106 U. S. at 411 (27 L. Ed. 169).

In the later case of Slocum v. N. Y. Life Ins. Co. the court after reviewing a number of cases, including Hodges v. Easton, supra, stated the rule as follows: "In principle, these cases are decisive of the question arising on the motion for judgment on the evidence notwithstanding the verdict. They show that it is the province of the jury to hear the evidence and by their verdict to settle the issues of fact, no matter what the state of the evidence, and that while it is the province of the court to aid the jury in the right discharge of their duty, even to the extent of directing their verdict where the insufficiency or conclusive character of the evidence warrants such a direction, the court cannot dispense with a verdict, or disregard one when given, and itself pass on the issues of fact. In other words, the constitutional guaranty operates to require that the issues be settled by the verdict of a jury, unless the right thereto be waived. It is not a question of whether the facts are difficult or easy of ascertainment, but of the tribunal charged with their ascertainment, and this, we have seen, consists of the court and jury, unless there be a waiver of the latter." Slocum v. N. Y. Life Ins. Co., 33 S. Ct. 532, 228 U. S. at 387, 388 (57 L. Ed. 879, Ann. Cas. 1914D, 1029).

For the reasons stated, we think that the motion of plaintiff was properly denied.

[3, 4] The principal question presented by the writ of error of defendants is whether the court erred in refusing to set aside the verdict as rendered and in entering judgment thereon. The contention of defendants, briefly stated, is that the declaration alleged a joint liability on the part of defendants; that the evidence, if it showed any liability at all, showed a joint liability; that the rendition of a verdict establishing several liability was in effect a mistrial; and that it was error in the court below to receive such verdict or to enter several judgments thereon. We agree with the defendants that there was error in receiving the verdict which apportioned between the defendants the liability for their joint wrong; but we think that it was error of which only the plaintiff could complain. Joint tort-feasors have no right to determine whether they shall be jointly or severally sued for their wrong. This right rests with the party aggrieved. If he elects to sue them jointly, he is entitled to a verdict responding to his allegations, so that he may have judgment for his entire damages against both of the wrongdoers. And in this case, if the plaintiff had moved to set aside the verdict and for a new trial, the motion should and in all probability would have been granted. But the defendants cannot complain, for the simple reason that they have not been hurt. As a result of the apportionment each has been subjected to a smaller judgment than would have been entered against him if a joint verdict had been returned. A case directly in point was decided by the Circuit Court of Appeals of the Fifth Circuit in 1911. Hooks v. Vet, 192 F. 314, 113 C. C. A. 526. That was an action of trespass for assault and battery against several defendants. The jury returned a verdict as follows: "Macon, Ga., May 20, 1911. We, the jury, find for the plaintiff as against B. A. Hooks and A. A. Cowart the sum of one thousand dollars each, and against T. W. Hooks, Blount Freeman, and Daniel Driggars, the sum of one hundred dollars each. R. L. Sparks, Foreman."

In sustaining a judgment entered upon the verdict, the court said: "If, however, we

concede the contention of the plaintiff in error that the verdict should have been joint, and not several, and that it was error to enter the several judgment on the verdict, it seems that it was certainly error without injury. As it stands, the judgment and verdict against the plaintiff in error is for only $1,000. The jury found that five of the defendants were properly liable for damages, and the aggregate sum of such damages, as found by the jury, amounted to $2,300. The result of the contention of the plaintiff in error would be that the judgment and verdict should have been for that sum against all the defendants jointly. The error, therefore, in assessing the damages severally, makes the plaintiff in error liable for only $1,000, when otherwise he would have been liable for $2,300, with no right to contribution. 8 Cyc. 804; 23 Cyc. 1470. If this is error, it is, as to the plaintiff in error, error without injury."

[5] In the case at bar there was no real dispute as to the damages sustained by plaintiff nor as to the fact that if there was fraud both defendants were liable for it. The only question was whether the defendants were guilty of the fraud. The jury found that question against the defendants, and defendants were benefited and not injured by the fact that the jury so apportioned the damages as to render against each a verdict for a less sum than was justified by the undisputed evidence as to damages. The rule seems well settled that a judgment will not be reversed for error in a verdict whatever its character if it is not prejudicial to appellant. 4 C. J. 1054. And by section 269 of the Judicial Code, as amended by the act of February 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), we are required to disregard technical errors, defects or exceptions which do not affect the substantial rights of the parties.

It is argued by defendants that the apportionment was prejudicial to them because contribution between joint tort-feasors against whom joint judgments ex delicto have been entered is authorized by section 8, chap. 136, Barnes' West Virginia Code of 1923. But this statute merely allows contribution where a joint judgment has been entered. It does not authorize one joint tort-feasor to insist that the others jointly liable be sued with him or give him any ground of objection to a several judgment. Notwithstanding the statute, he is still subject to a several judgment for the full damage inflicted by his wrong upon the injured party.

[6, 7] It should be observed also that even where a joint judgment has been rendered the statute does not authorize contribution in every case but only "to the same extent as if the judgments were ex contractu." In this case, therefore, even if there had been a joint judgment the defendant Ferguson would not have been in a position to enforce contribution from the bank, for the reason that Ferguson's liability was based upon a positive fraud perpetrated by him. "He who comes into equity must come with clean hands;" and certainly equity will not lend its aid to the perpetrator of a fraud to enable him to shift a portion of the liability therefor upon another. Buskirk v. Sanders, 73 S. E. 937, 70 W. Va. 363; Avery v. Central Bank of Kansas City, 119 S. W. 1106, 221 Mo. 71. Furthermore, the primary liability for the fraud rested on Ferguson. It was his fraud perpetrated for the benefit of the company of which he was treasurer although also incidentally for that of the bank. The bank was liable on the principle respondeat superior because the representations were made by him while acting as its vice president and were within the apparent scope of his authority; but, as the bank did not actually authorize the fraud, it would be entitled to reimbursement from him for any damage which it might sustain by reason of being compelled to respond to plaintiff in damages therefor. The right of contribution does not exist in favor of a joint tort-feasor primarily liable even under a statute such as that of West Virginia. Kinloch Telephone Co. v. City of St. Louis, 188 S. W. 182, 268 Mo. 485. So far as the bank is concerned, the verdict against it was only for the amount which it had actually received as a result of the fraud; and, as to this, it would certainly have no right to enforce contribution, which is an equity applied to enforce equality of burden where there is equality of obligation. In addition to this, the verdict against the bank was for less than one-half of the damage sustained by plaintiff, and in no possible view of the case could it have been benefited by the rendition of a joint verdict for the entire damages.

[8] We see no merit, whatever, in the assignment of error directed to the charge of the court. It was entirely proper that the court correct the erroneous statement of counsel and explain the difference between the ownership of stock in a corporation and the ownership of its plant. The difference, especially from the standpoint of credit, is a vital one, which Ferguson as an experienced banker and as the organizer of the Star Car & Foundry Company must necessarily have

realized. But whether he realized it or not, the statement in the letter was untrue, and the instruction of the court was proper. To tell the jury that the statement was untrue was not, as argued, an instruction to convict the defendants of fraud. There remained still the question of fraudulent intent, upon which the jury were correctly charged. It was proper that they should consider the ownership of stock as tending to show a lack of fraudulent intent in making the statement. It was not proper that they consider it as showing the truthfulness of the statement itself, which the uncontradicted evidence showed to be untrue.

Upon a careful review of the entire record and of the points presented on both writs of error, we are of opinion that the judgment of the District Court should be affirmed.

Affirmed.