240 F.2d 613
 MILWAUKEE INSURANCE COMPANY, Appellant,
v.
Max KOGEN, doing business as Kogen Fur Company, Appellee.
INDUSTRIAL INSURANCE COMPANY, Appellant,
v.
Max KOGEN, doing business as Kogen Fur Company, Appellee.
 No. 15577.
 No. 15578.
 United States Court of Appeals Eighth Circuit.
 February 11, 1957.
 
 Frank X. Cronan, Minneapolis, Minn. (Harold J. Carroll, Minneapolis, Minn., on the brief), for appellants.
 Frank Claybourne, St. Paul, Minn. (Doherty, Rumble & Butler, St. Paul, Minn., on the brief), for appellee.
 Before SANBORN, JOHNSEN and WHITTAKER, Circuit Judges.
 SANBORN, Circuit Judge.
 
 
 1
 The only substantial question for decision by this Court in these actions upon two Minnesota standard fire insurance policies (issued under § 65.01, M.S.A., prior to its repeal) is whether the District Court clearly misconceived or misapplied the substantive law of that State in ruling that the effect of a non-waiver agreement, entered into between the insured and his insurers shortly after he had furnished them with sworn statements of loss, was to extend the time within which an appraisal by arbitration of the fire loss, in conformity with the terms of the policies, might be demanded by the insured.
 
 
 2
 Federal jurisdiction is based on diversity of citizenship and amount in controversy. The actions were consolidated for trial and tried to a jury, which returned verdicts in favor of the plaintiff, the insured. The burden of demonstrating that the judgments appealed from are the result of a clear misconception or misapplication by the District Court of local law is upon the appellants, the insurers. As this Court has frequently pointed out, that burden, in cases such as these, is a heavy one. National Bellas Hess, Inc., v. Kalis, 8 Cir., 191 F.2d 739, 741; Kimble v. Willey, 8 Cir., 204 F.2d 238, 243, 38 A.L.R.2d 814. The question for review is not whether the conclusion of the trial court as to a question of local law is necessarily correct, but whether the court reached a permissible conclusion, Citizens Insurance Co. of New Jersey v. Foxbilt, Inc., 8 Cir., 226 F.2d 641, 643, that is, such a conclusion as this Court reasonably may believe that the Supreme Court of the State would or might reach, were it called upon to decide the question.
 
 
 3
 Briefly stated, the following is the factual situation out of which these controversies arose. Kogen, the plaintiff (appellee), was a retail furrier doing business in St. Paul, Minnesota. The defendants (appellants), Milwaukee Insurance Company and Industrial Insurance Company, had insured him, under separate policies, against loss or damage by fire to the contents of his store. The contents were damaged by fire on March 8, 1955. He retained, as his adjuster, Joseph Supornick, of Joseph Supornick & Son, Inc. Supornick on March 9 mailed each of the insurers a sworn statement of loss. On March 11, Kogen's adjuster and the adjusters for the insurers met at Kogen's store to check the items of loss and damage. There was agreement as to the damage to the store fixtures. The adjusters did not reach an accord as to the value of "totally destroyed" items of his stock, which Kogen asserted were new fur coats. He was to furnish invoices to substantiate his claim in that regard. On March 12, the adjuster for the Industrial Insurance Company sent to the adjuster for Kogen a letter reading as follows:
 
 
 4
 "March 12, 1955

"Mr. Irving Lampert, Adjuster
Joseph Supornick & Son, Inc.
Guardian Building
St. Paul, Minn.

 "Re: Max Kogen dba Kogen Fur
 Company
 Industrial Pol. No. OC
 59960
 Loss March 8, 1955.
"Dear Sir:
 
 
 5
 "We are enclosing a Non-Waiver Agreement in duplicate for the signature of assured.
 
 
 6
 "Will you kindly have these executed and return one copy to us, so that we may proceed with the inspection and appraisal of damage for the above party. Thank you.
 
 
 7
 "Very truly yours,
 J. B. Tonskemper,
"JBT James B. Tonskemper,
 Adjuster"
 
 
 8
 The following non-waiver agreement, dated March 14, which was referred to in the letter, was signed by the insured and by the adjusters for the insurers:
 
 
 9
 "It Is Hereby Understood and Agreed by and between the parties signing this agreement, that any action taken by the hereinafter named Insurance Company or Companies in investigating the cause of loss, or investigating and ascertaining the amount of sound value, or the amount of loss and damage which occurred on March 8th, 1955, shall not waive or invalidate any of the terms or conditions of any policy or policies, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.
 
 
 10
 "It Is Further Understood and Agreed that neither the examination of the insured or of any other person, the examination of the books of account, bills, invoices, or other vouchers of the insured or any other person, the request of any other information, or the furnishing thereof, or the incurring of any trouble or expense by the insured shall waive or invalidate any of the terms and conditions of the policy or policies, or any defense thereunder.
 
 
 11
 "The Intent of this agreement is to preserve the rights of all parties hereto, and to permit an investigation of the cause of loss, the investigation and ascertainment of the amount of sound value, or the amount of loss and damage, or any of them without regard to the liability of the hereinafter named Insurance Company or Companies.
 
 
 12
 "Witness our hands in duplicate this 14th day of March, 1955.
 
 
 13
 "Industrial Insurance
 Company of New Jersey Max Kogen
 "By: J. B. Tonskemper
 "Milwaukee Ins. Co. of Wisc.
 "By: Ollie R. Eylar"
 
 
 14
 At the time the non-waiver agreement was signed, both Kogen and the insurers had the right to demand an appraisal of the loss and damage under the arbitration provisions of the policies in case of a failure of the parties to reach an agreement.[1] So far as the record shows, the parties, at the time the non-waiver agreement was signed, were attempting to reach an agreement as to the amount of loss. There was another meeting of the adjusters at the store on March 18, but without result.
 
 
 15
 On March 26, slightly more than fifteen days after sworn statements of loss had been furnished the insurers, Supornick mailed a letter to each of them demanding an appraisal and designating an appraiser. The insurers declined to appoint an appraiser. Following the arbitration procedure outlined in the policies, Kogen procured the appointment of an umpire. The umpire and the appraiser held a hearing to determine the amount of loss. The insurers declined to appear. The amount of loss and damage was determined by an award of the appraiser and the umpire. Unless the demand of Kogen for an appraisal was out of time, as the insurers contend, the procedure upon which the award was based conformed to the provisions of the policies, and the award was binding on the insurers with respect to the amount of loss and damage.
 
 
 16
 The insurers did not pay, and Kogen brought these actions upon the claim that he had suffered a fire loss covered by the policies in suit, that the amount of his loss had been determined by arbitration in conformity with the provisions of the policies, and that the insurers were obligated to pay the amount of the award. The defenses of the insurers were that the appraiser and the umpire who made the award were improperly appointed, that the award was not made in conformity with the policies, and that it was not binding on the insurers. They also asserted that Kogen had attempted to defraud them, thereby making the policy void.
 
 
 17
 The issue of attempted fraud was properly submitted to the jury, and was, by its general verdict, conclusively decided in favor of Kogen.
 
 
 18
 The insurers contend that the District Court erred in permitting Joseph Supornick, as a witness for Kogen, to testify, over objection, as to what he (Supornick) considered the purpose of a non-waiver agreement such as that in suit, and to describe the customary appraisal procedure under like policies. Whatever error there may have been in receiving Supornick's opinion as to the purpose and effect of a non-waiver agreement and his description of appraisal procedures, we are satisfied was harmless in view of the court's ruling that, as a matter of law, Kogen's demand for an appraisal and the procedure resulting in the award conformed to the policies, and that the award was the measure of the insured's loss. If the court was right, the testimony of Supornick, referred to by the insurers, could not, in any way, have affected the result of the trial.
 
 
 19
 Unless the non-waiver agreement had the effect of extending the fifteen days time within which an appraisal by arbitration could be demanded, the demand of the insured in the instant case was too late. See Minnesota Farmers Mutual Insurance Co. v. Smart, 204 Minn. 101, 106, 282 N.W. 658, 661.
 
 
 20
 The Supreme Court of Minnesota has said: "Failure or inability of the parties to agree as to the amount of the loss conditions the right to an appraisement or arbitration." Boston Insurance Co. v. A. H. Jacobson Co., 226 Minn. 479, 481, 33 N.W.2d 602, 604.
 
 
 21
 As we have said, at the time of the execution of the non-waiver agreement the right to demand an appraisal by arbitration, in the event the parties were unable to agree, unquestionably existed. The evident purpose of the non-waiver agreement was to enable the insurers, without jeopardizing their rights, to continue their investigation of the fire loss for the very purpose of determining whether to agree or disagree with the insured as to the amount of his loss, and, in the meantime, to preserve, unimpaired, the rights of all parties. Certainly among those rights was the then existing right of the insured to demand an appraisal by arbitration in the event the insurers should conclude not to agree with him as to the amount of his loss.
 
 
 22
 Unless the effect of the non-waiver agreement was to suspend, from the time of its execution until there was a definite failure of the parties to agree upon the amount of loss, the further running of the fifteen-day period for making demand for an appraisal, the purpose and intent of the insurers in seeking time and opportunity for further investigation and negotiation might well have been frustrated.
 
 
 23
 While we cannot, of course, predict with certainty what the ruling of the Supreme Court of Minnesota would be in a like case, we find nothing illogical or violative of any established rule of Minnesota law in the conclusion of the District Court that, because of the non-waiver agreement, the demand of the insured for an appraisal was not untimely, and that the measure of the insured's loss was the award made by the appraiser and the umpire. The District Court, in our opinion, reached a permissible conclusion as to a doubtful question of Minnesota law.[2]
 
 
 24
 The judgments appealed from are affirmed.
 
 
 25
 WHITTAKER, Circuit Judge, dissents.
 
 
 
 Notes:
 
 
 [1]
 "§ 65.01 [M.S.A., Vol. 7, pages 62-63] Standard fire policy
 * * * * *
 "In case of loss, except in case of total loss on buildings, under this policy and a failure of the parties to agree as to the amount of the loss, it is mutually agreed that the amount of such loss shall, as above provided, be ascertained by two competent, disinterested and impartial appraisers who shall be residents of this state, the insured and this company each selecting one within fifteen days after a statement of such loss has been rendered to the company, as herein provided, and in case either party fail to select an appraiser within such time, the other appraiser and the umpire selected, as herein provided may act as a board of appraisers, and whatever award they shall find shall be as binding as though the two appraisers had been chosen; and the two so chosen shall first select a competent, disinterested and impartial umpire; provided, that if after five days two appraisers cannot agree on such an umpire, the presiding judge of the district court of the county wherein the loss occurs may appoint such an umpire upon application of either party in writing by giving five days' notice thereof in writing to the other party. Unless within fifteen days after a statement of such loss has been rendered to the company, either party, the assured or the company, shall have notified the other in writing that such party demands an appraisal, such right to an appraisal shall be waived; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the unpire; and the award in writing of any two shall determine the amount of loss; the parties thereto shall pay the appraisers respectively selected by them and shall bear equally the expenses for the appraisal and umpire. The fees of any appraiser or umpire shall in no case exceed ten dollars ($10.00) per day."
 
 
 [2]
 Out of a superabundance of caution, the appellee has printed an elaborate supplement to the printed record, the cost of which, we think, should not be taxed against the appellants, since it was unnecessary and to some extent violative of our Rule 10(c), 28 U.S.C.A. requiring that evidence contained in a printed supplement shall be in narrative form