KANSAS CITY OPERATING CORPORA-
TION, Appellant,

v.

Stanley Hugh DURWOOD, Marjorie Beth
Grant and Richard Mark Durwood, Ex-
ecutors of the Estate of Edward Dubin-
sky Durwood, Deceased, Appellees.

No. 16381.

United States Court of Appeals
Eighth Circuit.

May 16, 1960.

Albert Thomson, Kansas City, Mo., for appellant.

Terence M. O'Brien, Kansas City, Mo., for appellees.

Before SANBORN, VAN OOSTER-HOUT, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

This is an action for indemnity in which plaintiff-appellant, Kansas City Operating Corporation, (hereinafter called "plaintiff") claims that appellees' decedent, Edward Dubinsky Durwood,[1] (hereinafter called "Durwood" or "defendant") undertook by written agreement dated May 29, 1939, to indemnify plaintiff from all loss resulting from the termination of two lawsuits which were then pending in the Circuit Court of Jackson County, Missouri.

From a pre-trial order entered on February 6, 1958, it appears that the issues as joined by the pleadings were submitted to the Court on numerous exhibits, pleadings, and stipulations, all appearing of record in this case.

On November 6, 1959, after due consideration, the Court found that plaintiff had no enforceable claim against Durwood and entered an order dismissing plaintiff's complaint. It is from this order that plaintiff has appealed.

The case presents an interesting and somewhat complicated factual background concerning which there is little dispute. Due to the great span of time and the numerous parties, the facts tend to become confusing, but for a proper understanding of the real issue, which depends upon a state court suit instituted in 1933, which did not come to final judgment until 1954, it is necessary to outline the circumstances in some detail. Our task with respect to assembling and understanding the factual situation has been greatly aided by a memorandum and order of the trial judge, which catalogs and details a number of transactions leading up to the filing of this action.

The foundation for all subsequent events is a May 23, 1925 contract whereby J. G. Schneider and wife leased the Colonial Theatre in St. Joseph, Missouri, to Hostettler Amusement Company and Aksarben Theatre Enterprises, Inc., at a monthly rental of $500 for a term commencing December 1, 1927, and ending May 30, 1935, unless sooner terminated, in accordance with other provisions of the lease.[2]

On *May 26, 1928,* the lessees assigned the lease to Mid-Continent Theatres, Inc. (hereinafter called "Mid-Continent"), and on *October 11, 1928,* Mid-Continent assigned the lease to Lincoln Theatres Corporation (hereinafter called "Lincoln"). The consideration for this sale of the lease was the assumption by Lincoln of the underlying rent of $500 per month and the payment to Mid-Continent of an additional sum of $34,666.66 in equal monthly installments of $433.33. Payment of these additional installments was to cease upon a proper termination of the lease.[3] On *July 4, 1931,* Lincoln

---

1. After oral argument on this appeal, the death of Edward Dubinsky Durwood, defendant below, was suggested, and Stanley Hugh Durwood, Majorie Beth Grant and Richard Mark Durwood, as Executors of the Estate of Edward Dubinsky Durwood, Deceased, were substituted as appellees.

2. Lessor reserved the right to cancel the lease in the event that lessor (a) sold the real estate; or (b) made a lease for

50 years or more; or (c) desired to remove the improvements and construct other and different facilities.

3. Such interpretation is sufficient for our discussion. The issues in the state suit revolved around this clause, and the holding there depended upon a finding that the lease had been improperly terminated. The clause actually provided:

"* * * that should the underlying lease be terminated for any cause other

assigned the lease to plaintiff for the consideration of $10 and the assumption of Lincoln's obligation with respect to payment of the $34,666.66.

Before reciting further facts, it should here be stated that plaintiff was a subsidiary of the Paramount-Publix Corporation, and that, prior to September 17, 1932, Durwood and Paramount had engaged in transactions with respect to the operation of various Paramount theatres. Under a certain settlement contract between Durwood and Paramount (not involved here), Durwood agreed to buy the unexpired lease term of the Colonial Theatre. Since title was in the Paramount subsidiary, a contract was entered into on *September 17, 1932,* between plaintiff as first party, Durwood as second party, and Paramount as third party, whereby the Colonial Theatre lease was assigned to Durwood, who thereafter took possession, paying the $500 monthly rental as required by the lease, and making payments of $433.33 per month to Mid-Continent.[4]

On *May 3, 1933,* ostensibly pursuant to the termination clause in the lease, the lessor, Schneider, gave a 90-day cancellation notice to Durwood; on May 5, 1933, Durwood and the lessor entered into a contract whereby Durwood waived his 90-day possession, the lessor waived 90 days' rent, and the parties agreed that the lease be terminated as of May 5, 1933. In addition, Durwood paid the lessor $6,000 for a covenant not to compete for 20 years. Thereafter, no further payments were made to Mid-Continent, and after numerous letters and negotiations, it appears that on December 22, 1933, Mid-Continent filed suit against Lincoln and plaintiff (Case No. 426,581) in the Circuit Court of Jackson County, Missouri, for the purpose of pressing its claim for the balance due on the $34,666.-66 sales price agreed upon in the 1928 lease assignment to Lincoln. A second suit was subsequently filed (Case No. 426,877) against Lincoln, plaintiff and Durwood.[5]

On *May 29, 1939,* while the Mid-Continent suits were still pending in the state court, a new agreement, which is the basis of the present action, was entered into between Durwood and Paramount, wherein, after reference to the September 17, 1932 contract, Durwood agreed to indemnify and save harmless Lincoln Theatres, plaintiff, Paramount and all of its subsidiaries, from all loss, costs, expenses, etc., accruing since September 17, 1932, arising out of (a) "the * * * leases * * * covering respectively the Colonial, Electric and Missouri Theatres * * * and/or all guarantees in connection with said leases, and (b) including, without limiting the generality of the aforegoing, the two actions, to-wit, the action pending in the Circuit Court of Jackson County, Missouri, * * * No. 426877 and * * * No. 426581." It further appears, by instrument of the same date, that Durwood was released of the balance due and owing to plaintiff arising from his purchase of the unexpired lease term.

Case No. 426,581 was not tried in the state court until *March 19, 1945;* Durwood's deposition was introduced in that trial. On *June 29, 1954,* some 9 years thereafter, "Findings of Fact and Con-

---

than any act or omission of the Assignee, * * * or a breach or default upon the part of the Assignee * * * then the obligation of the Assignee to pay the above sum or any installments thereof accruing subsequent to such termination shall cease. * * * "

4. The Circuit Court of Jackson County, Missouri, ruled in Woolf, Trustee v. Lincoln Theatres Corp., et al., No. 426,581, that Durwood, in taking assignment of the lease, did not assume responsibility for making monthly payments to Mid-

Continent. This point is not in issue and is of no consequence in this proceeding.

5. The plaintiff in the state court actions is referred to as "Mid-Continent" for sake of clarity. Initially suit was filed in the state court by trustees for certain former stockholders of "Midland Theatre & Realty Company," as legal owners of all the rights of Mid-Continent. At the time of appeal to the Supreme Court of Missouri, one Herbert M. Woolf, acting as sole surviving trustee, was the nominal plaintiff.

clusions of Law" were entered by the state court and judgment was rendered in favor of Mid-Continent and against plaintiff for $23,859.74. The state court found that the cancellation of the lease had been improperly induced by Durwood, plaintiff and Paramount for the purpose of defrauding Mid-Continent.

In June, 1955, while appeal from that judgment was pending, plaintiff was able to settle and compromise both suits for $15,040.60.

In October, 1955, the present suit, a diversity action, was filed in the United States District Court for recovery of this sum, plus attorneys fees and expenses, the total claimed amounting to $19,624.46.

The first issue considered and disposed of by Judge Ridge in the lower court was, "what is the proper interpretation to be given to the indemnity agreement contained in Exhibit J," [6] (indemnity contract of May 29, 1939 here in issue). Judge Ridge resolved this question by finding that Durwood bound himself to indemnify plaintiff from all loss in connection with the two state court actions. However, in the same memorandum the court directed that the final judgment be stayed until a further pre-trial conference was held regarding the bona fides of the settlement of the circuit court judgment and litigation.

After this order was entered, and on October 29, 1959, Durwood filed an amendment to his answer in which he alleged that the findings of fact, conclusions of law and the judgment in Case No. 426,581 (Woolf, Trustee, v. Lincoln Theatres Co. and Kansas City Operating Corporation) show that in the transactions which resulted in the loss for which indemnity is sought, plaintiff and Durwood were guilty of illegal conduct, fraud and conspiracy; that plaintiff and Durwood were in pari delicto and therefore plaintiff is barred from recovering in this action.

Thereafter, and on November 6, 1959, the trial court filed a supplemental memorandum which brought into focus the issue presented by the amendment to Durwood's answer. From this memorandum it is quite apparent that Judge Ridge carefully reviewed the findings of fact and conclusions of law made by the state court in Case No. 426,581, and from this consideration Judge Ridge found:

"The only conclusion to be reached therefrom is that Judge Cook [7] rendered judgment in favor of the plaintiff in that action and against the Kansas City Operating Corporation and Lincoln Theatres Corporation, defendants therein, on the theory that the cancellation of the Schneider lease was brought about by a conspiracy between Paramount-Publix, Edward Dubinsky Durwood, and Kansas City Operating Corporation, to defraud the statutory trustees of Midland Theatre and Realty Company (Mid-Continent) out of the fruits of a bargain."

After an analysis of what Judge Ridge considered to be the applicable legal principles, he declared the law to be:

"That the judgment here considered being entered by the Circuit Court of Jackson County, Missouri, and based on conspiracy and fraud, as to which plaintiff and defendant here were found by that Court to be in pari delicto, plaintiff in this action has no enforceable claim against defendant, and plaintiff's complaint should now be dismissed."

In determining whether plaintiff has a right to enforce its indemnity contract, we are guided by well established principles of law which form the legal framework of this case. Generally, anyone who engages in a fraudulent scheme forfeits all right to protection, either at law or in equity. This rule was succinctly set forth long ago by Lord Mansfield in Holman v. Johnson, (1

---

6. The trial court exhaustively considered this issue in a memorandum and order filed on July 1, 1958.

7. The Circuit Court Case No. 426,581 was tried before Judge Cook.

Cowper 341, 343), 98 Eng. Reports Reprint 1120, 1121, in this language:

"The objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may say so. The principle of public policy is this: *Ex dolo malo non oritur actio.* (Out of fraud no action arises.) No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the Court says he has no right to be assisted. It is upon that ground the Court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff."

The rule has frequently been reiterated by the American courts. See Higgins v. McCrea, 116 U.S. 671, 685, 6 S.Ct. 557, 29 L.Ed. 704; Oscanyan v. Arms Co., 103 U.S. 261, 268, 269, 26 L.Ed. 539; McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494. If the parties to a fraud are in pari delicto, the law will leave them where it finds them, and "(n)o one will be permitted in a court of justice to take advantage of, or claim protection by reason of his own fraud." 23 Am.Jur. Fraud and Deceit § 182, p. 1002, and § 183; 12 Am.Jur. Contracts § 212. See also Blank v. Nohl, 112 Mo. 159, 20 S. W. 477, 18 L.R.A. 350; Ohio Casualty Co. of Hamilton, Ohio v. Swan, 8 Cir., 89 F.2d 719, 725; and compare, Marshall v. Lovell, D.C.Minn., 11 F.2d 632, affirmed, 8 Cir., 19 F.2d 751; Stewart v. Wright, 8 Cir., 147 F. 321, certiorari denied 203 U.S. 590, 27 S.Ct. 777, 51 L.Ed. 330, and Hobbs v. Boatright, 195 Mo. 693, 93 S.W. 934, 5 L.R.A.,N.S., 906. This same principle is inherent in the common law rule that contribution or indemnity may not be had between joint tort-feasors or wrongdoers, see Busch & Latta Paint Co. v. Woermann Const. Co., 310 Mo. 419, 276 S.W. 614, 619; Fidelity & Casualty Co. of New York v. Federal Express, 6 Cir., 136 F.2d 35, 40; Union Stock Yards Co. of Omaha v. Chicago & C. R. R. Co., 196 U.S. 217, 226, 25 S.Ct. 226, 49 L.Ed. 453; 23 Am.Jur. Fraud and Deceit § 183; 27 Am.Jur. Indemnity §§ 11, 12. Thus, where an indemnitee has participated in and brought about the loss he has suffered by his own wrongful or fraudulent conduct, or is found to be in pari delicto with the indemnitor, he cannot recover the loss through an action for contribution or indemnity. Avery v. Central Bank of Kansas City, 221 Mo. 71, 119 S.W. 1106, 1111, 1112; Rice Bros. & Nixon v. National Bank of Commerce, 98 Mo.App. 696, 73 S.W. 930; Weckerly v. German Lutheran Congregation, 3 Rawle, Pa., 172. In Corbin on Contracts, Vol. 6, § 1536, p. 1062, this pronouncement appears: "Ordinarily one who participates in a conspiracy to defraud third persons is regarded as morally delinquent and not entitled to restitution from another participant."

Cases in which attempt is made to enforce contracts which are obviously illegal, or actions which stem directly from illegal acts, such as suit for recovery of bribe money, etc., see Oscanyan v. Arms Co., 103 U.S. 261, 26 L.Ed. 539; Womack v. Maner, 227 Ark. 786, 301 S.W.2d 438, 60 A.L.R.2d 1271, present no difficulty to the courts. The problem becomes more complex, however, when suit is brought upon a contract which, although perfectly valid upon its face, is touched in some manner by antecedent illegality. Professor Corbin, in his treatise on Contracts, has recognized the problem in this language:

"There are many bargains, wholly lawful in themselves, that the parties would not have made except for the fact that an antecedent illegal transaction had taken place. A mere casual relation such as this, the bar-

gain not being substantially identical with the illegal transaction and its enforcement not being the consummation of an illegal purpose, is not ground for refusal of such enforcement. The illegal transaction is in such cases described as 'collateral' or 'remote.'" Corbin on Contracts, Vol. 6 § 1529, p. 1030.

It is upon this distinction that plaintiff relies. Specifically, it is plaintiff's theory that the 1939 indemnity contract was supported by a valuable consideration wholly removed from any consideration which flowed to plaintiff and Durwood from cancellation of the Schneider lease,[8] and that the contract is so far removed from, and collateral to, the conspiracy and fraudulent conduct of plaintiff and Durwood as to leave the contract untainted with such fraud.

▮ A twofold test has been developed by the courts, and plaintiff's counsel concede that the controlling law is announced in Missouri Fidelity and Casualty Co. v. Art Metal Const. Co., 8 Cir., 242 F. 630. There, this Court, in considering whether violation of a corporate registration statute barred recovery upon a bond made to secure a note given in payment for furniture, stated, at page 632:

"We think this case falls within the rule first stated in Armstrong v. Toler, 11 Wheat. 258, 6 L.Ed. 468, and subsequently applied in many cases in the Supreme Court and in this court, namely, that when a contract is only remotely connected with an unlawful transaction, and rests upon a new and independent consideration, *and the plaintiff can make out his case without any reliance upon the unlawful transaction, the new contract is valid and should be enforced.*" (Emphasis supplied.)

In Fidelity & Deposit Co. of Maryland v. Grand Nat. Bank of St. Louis, D.C. Mo., 2 F.Supp. 666, 669, reversed on other grounds, 8 Cir., 69 F.2d 177, the test was stated in this language:

"Where it is necessary * * * to prove an unlawful undertaking in order to maintain an action, the courts will not enforce it; nor will they enforce alleged rights springing from it. They should decline to supervise distribution among wrongdoers of spoils derived from unlawful conduct. (Citing cases)."

Aside from any question of whether the indemnity contract here in issue rested upon separate consideration, which we need not determine, it is clear that plaintiff's right to recover depends upon how plaintiff must *prove* its right. We cannot agree with plaintiff's contention that the fraud issue may be completely avoided since all it was required to show was a formal judgment, and the compromise and the settlement amount agreed upon with Mid-Continent. Apart from the fact that plaintiff submitted the findings of fact and conclusions of law in Case No. 426,581, as "Exhibit O," and that these findings were a part of the case from the beginning, defendant had every right to affirmatively introduce the element of conspiracy and fraud, which he did by the filing of the amendment to the answer, apparently without objection. Indeed, it seems to us that in any case in which, as here, the indemnitor asserts that his liability grew out of an illegal bargain or fraudulent scheme, the court is under obligation to ascertain the true facts, and that it is not precluded in such instances from an examination of all proceedings leading to the judgment which form the formal basis for the indemnity action. See Weckerly v. German Lutheran Congregation, 3 Rawle, Pa., 172, 180; American Surety Co. of New York v. Singer Sewing Mach. Co., D.C.N.Y., 18 F.Supp. 750; Vol. 6 Corbin on Contracts § 1533.

In so considering all the circumstances, Judge Ridge's conclusion that the judg-

---

8. It is suggested that consideration for the indemnity was a partial cancellation of Durwood's outstanding indebtedness to plaintiff.

ment rendered in favor of plaintiff in the state court action was based upon a finding of a conspiracy between plaintiff, Durwood and Paramount to defraud Mid-Continent of the balance due on the $34,-666.66, is fully supported by the record. By findings of fact Nos. 18 and 19, Judge Cook of the Missouri court found:

"* * * a conspiracy and a concert of action existed between Paramount-Publix, Edward Dubinsky (Durwood) and the defendant Kansas City Operating Corporation to effect and bring about a cancellation of said (Schneider) lease for the purpose of defrauding the plaintiff (i. e. Mid-Continent) from the fruits of its agreement; and such inferences and such conspiracy and concert of action are so found."

In Conclusion of Law No. 6, it was stated:

"* * * under all of the circumstances set forth and found in paragraphs 18 and 19 of the above findings of fact, * * * [the reasonable inference is] that a conspiracy and a concert of action existed between the defendant Kansas City Operating Corporation and its parent Paramount-Publix and its assignee Edward Dubinsky to effect and bring about a cancellation of said lease for the purpose of defrauding the plaintiff from the fruits of its agreement."

By No. 7, the court concluded:

"The defendant Kansas City Operating Corporation and others, not parties in this action, conspired to and did defraud plaintiff (Mid-Continent) in effecting and bringing about a cancellation of said (Schneider) lease for the purpose of and in an attempt to deprive plaintiff of the sums due it under the provisions of said Exhibit 'C'."

■ Since plaintiff here must rely on the judgment against it in the earlier action as the basis of its right in this case, it is bound by these findings which support the judgment, and such findings are fatal to its right to recover. In 42 C.J.S. Indemnity § 32b, p. 619, the general rule is declared to be:

"The indemnitee is concluded as to facts established in the former action against him; and hence, *if it appears that the judgment in the first action was based on a finding of fact fatal to the recovery in the second, the action over cannot be maintained.*" (Emphasis supplied.)

The question is the subject of an annotation in 24 A.L.R.2d 329, where the annotator states at p. 330:

"Irrespective of whether a judgment obtained by an injured person against an indemnitee is conclusive upon the indemnitor under the general rules governing the conclusiveness of judgments, the authorities which have considered the subject of this annotation as a distinct question hold *unanimously* that an indemnitee, in his action to recover from the indemnitor the amounts paid in satisfaction of a judgment obtained against him by an injured person, is bound by all findings without which the judgment could not have been rendered, and that, if the judgment in the earlier action rested on a fact fatal to recovery in the action over against the indemnitor, the latter action cannot be successfully maintained." (Emphasis supplied).

This rule has been applied where the right to indemnity was based upon an express agreement irrespective of whether the prior suit was based on contract or tort. 24 A.L.R.2d at p. 334 et seq. See also Fidelity & Casualty Co. of New York v. Federal Express, 6 Cir., 136 F. 2d 35; American Surety Co. of New York v. Singer Sewing Mach. Co., D.C. N.Y., 18 F.Supp. 750, 754; Weckerly v. German Lutheran Congregation, 3 Rawle, Pa., 172, 180; Avery v. Central Bank of Kansas City, 221 Mo. 71, 119 S.W. 1106; Clinchfield Railroad Co. v. United States, Fidelity & Guaranty Co., 6 Cir., 263 F. 2d 932.

Interwoven in plaintiff's argument is the contention that since the indemnity contract is a legal and valid contract facially, its enforcement does not require the court to give force and effect to the furtherance of the fraudulent scheme and conspiracy which was directed against Mid-Continent in 1933. While it is true that plaintiff does not seek a "division of the spoils" flowing from the fraud, plaintiff overlooks the fact that the loss for which it claims indemnification stemmed *directly from* the act of fraud and conspiracy. The holdings in Hutchinson v. Dornin, 23 Mo.App. 575; Kansas City Hydraulic Press Brick Co. v. National Surety Co., 8 Cir., 167 F. 496, certiorari denied 218 U.S. 682, 31 S.Ct. 229, 54 L. Ed. 1208; Missouri Fidelity & Casualty Co. v. Art Metal Const. Co., 8 Cir., 242 F. 630, relied upon by plaintiff, may be distinguished on that ground, for in each case the debt involved arose from a truly separate and legal transaction, unconnected with the illegal element. See cases cited, Vol. 6 Corbin on Contracts § 1529.

Plaintiff also relies on Fidelity & Deposit Co. of Maryland v. Grand Nat. Bank of St. Louis, 8 Cir., 69 F.2d 177, reversing D.C., 2 F.Supp. 666. That case presented the unusual spectacle of a bank paying the sum of $140,000 to the underworld element in order to secure the return of certain bonds which had been illegally taken in a robbery or burglary. Both the bank and its insurer had negotiated through an intermediary for the return of the securities. After the bonds were returned and the $140,000 paid, the insurance company brought an action to recover sums which it had paid to the bank under a policy of robbery insur-

ance. The trial court denied recovery on the theory that the undertaking and transaction leading to a recovery of the bonds, and hence giving rise to the insurer's right of recovery, was offensive to the law and consequently opposed to public policy because its purpose was to keep secret a crime or stifle a criminal prosecution; and, that since plaintiff and defendant were in pari delicto, plaintiff could not recover. On appeal this Court reversed. While indulging in some suggestive language which plaintiff seizes upon,[9] we believe it is clear beyond question, that the appeal turned on the single question of whether the bank and its insurer had actually engaged in an illegal act or conduct opposed to public policy in negotiating for the return of the stolen bonds. While this Court sanctioned the principle of universal application that "(a)n agreement to stifle a prosecution, suppress evidence, compound an offense, or conceal a crime which has been committed is void because it is contrary to public policy," 69 F.2d at page 180, (citing many authorities), it concluded that there was no support in the evidence for the trial court's finding that the bank and insurance company had committed acts proscribed by the foregoing rule. The gist of the holding is found in this paragraph, at page 183 of 69 F.2d: "A careful study of this record convinces us that there is no substantial evidence sustaining the finding or conclusion that the contract by which the defendant (bank) secured a restoration of its property from the robbers was void as against public policy."[10] Thus, when the opinion is considered as a whole, and in light of the crucial point involved, it may be regarded as supporting in principle our conclusions herein.

---

9. At 69 F.2d 184, the Court stated:

"It is important to bear in mind that the questioned transaction was a completed one, and the plaintiff is not asking to divide up the profits of an illegal transaction, but is asking for the enforcement of a perfectly legal contract. Under these conditions the defendant cannot set up as a defense the illegality of the contract by which it secured a return of its property."

10. Compare, Kistenmacher v. Travelers' Indemnity Co., Mo.App., 273 S.W. 125, sub. nom. State ex rel. Travelers Indemnity Co. v. Daues, 315 Mo. 22, 285 S.W. 479; and Kansas City Hydraulic Press Brick Co. v. National Surety Co., 8 Cir., 167 F. 496, 503, certiorari denied 218 U.S. 682, 31 S.Ct. 229, 54 L.Ed. 1208.

Plaintiff also urges the point that there is no actual basis for the application of the pari delicto rule against plaintiff, contending (1) that there was no pleading of conspiracy to defraud in the state court action; (2) that there was no proof of a conspiracy; (3) that Mid-Continent's trial attorney in the state court case stated there was no charge of conspiracy, and (4) the long delay in the state court case negates existence of reprehensible fraud. Obviously, this is an effort to re-try the issue of fraud and to collaterally attack the judgment of the state court, and its findings of fact and conclusions of law. Examination of the transcript of the state court reveals that, while not pleaded, conspiracy was one of the issues that was tried. Plaintiff has no standing to complain of those findings; it was a party to the state court case; it actively participated in the defense thereof; after judgment, it prosecuted an appeal to the Supreme Court of Missouri, and then settled the judgment while the appeal was pending. The judgment is final and conclusive on the question of conspiracy to defraud, and plaintiff cannot now be heard in an effort to circumvent the force and effect thereof.

The decision of Judge Ridge, whose competency to rule upon an issue of Missouri law cannot be questioned, represents his considered views as to what the Supreme Court of Missouri would probably hold if called upon to decide this case. We have repeatedly said that we would not reverse a trial judge who had reached a permissible conclusion with respect to a doubtful question of the law of his state. See and compare, Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709, 713, rehearing denied, 134 F.2d 612, certiorari denied, 319 U.S. 773, 63 S.Ct. 1439, 87 L.Ed. 1720; Buder v. Becker, 8 Cir., 185 F.2d 311, 315–316; Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43; National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734. We are satisfied that Judge Ridge, to say the least, has reached a permissible conclusion as to a doubtful question of state law.

The judgment appealed from is Affirmed.