**TEXACO–CITIES SERVICE PIPE LINE COMPANY et al., Appellants,**

**v.**

**AETNA CASUALTY & SURETY COMPANY, Appellee.**

**No. 16438.**

United States Court of Appeals
Eighth Circuit.

Dec. 5, 1960.

*Woodrough*, Circuit Judge, dissented.

F. B. Freeman, Springfield, Mo., made argument in behalf of appellants; Neale, Newman, Bradshaw, Freeman & Neale, Springfield, Mo., on the brief.

B. H. Clampett, Springfield, Mo., presented oral argument for appellee; Glenn A. Burkart, and William T. Powers, Jr., and Walker, Daniel, Clampett, Rittershouse & Ellis, Springfield, Mo., on the brief.

Before SANBORN, WOODROUGH and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment for The Aetna Casualty & Surety Company (hereinafter referred to as "Aetna"), a third party defendant in an action brought in May 1958 by Texaco-Cities Service Pipe Line Company, a Delaware corporation, as plaintiff, against Clell Hedgpeth and Frank Stewart, partners doing business as Hedgpeth & Stewart, as defendants, to recover damages caused by an injury to the plaintiff's pipe line, allegedly due to the negligence of one of the defendants' employees. In their answer the defendants denied that their employee was negligent. Aetna was the lia-

914

bility insurer of the defendants. If the defendants' liability for damages resulting from the accidental injury to the pipe line was within the coverage of the policy of Aetna, it was obligated to defend on behalf of Hedgpeth and Stewart, and to pay, within limits, any judgment for damages obtained against them. Aetna was brought into the case as a third party defendant by Hedgpeth and Stewart. It had refused to defend on their behalf, and denied that their liability for damages caused by the accident in suit was within the coverage of the policy.

The case was tried to the court without a jury. The facts were virtually undisputed. The court determined that Hedgpeth and Stewart were liable to the plaintiff for the damages it sustained as a result of the accident, but that their liability was not within the coverage of the Aetna policy, and that Aetna was entitled to a judgment dismissing the third party complaint and for its costs. Judgment was entered accordingly, from which, in so far as it was in favor of Aetna, the plaintiff and the defendants have jointly appealed.

After the appeal was argued and submitted to this Court, it was discovered that the averments of the pleadings relative to diversity jurisdiction were defective. Leave to amend was granted. 8 Cir., 283 F.2d 144. The jurisdictional allegations have been corrected, and the case is now for decision on the merits.

■ The question for review is not whether the District Court reached a correct conclusion, but whether it reached a permissible one, in ruling that, under the evidence and the applicable law, which is that of Missouri, the liability of Hedgpeth and Stewart to the plaintiff for the damages resulting from the accidental breaking of its pipe line was not within the insurance coverage of the Aetna policy. Dierks Lumber & Coal Co. v. Barnett, 8 Cir., 221 F.2d 695, 697; Citizens Insurance Co. of New Jersey v. Foxbilt, Inc., 8 Cir., 226 F.2d 641, 643, 53 A.L.R.2d 1376; Milwaukee Insurance Co. v. Kogen, 8 Cir., 240 F.2d 613, 615.

The factual situation out of which this litigation arose is, in substance, as follows: In August 1957 the defendants were engaged in highway construction work in St. Clair County, Missouri, near Osceola, in the vicinity of an underground pipe line of the plaintiff, which crossed the highway upon which the work was being done. On August 23, 1957, Robert Hannah, an employee of the defendants, was grading in the locality of the pipe line with a bulldozer, to which a mechanical device known as a ripper, "used for digging out ditches", was attached. The ripper had a tooth which could be raised about six inches above the ground or could be lowered to a depth of 16 to 18 inches below its surface. The plaintiff's pipe line was from 10 to 14 inches underground. The ripper, with the tooth raised, crossed the pipe line safely while Hannah was grading on one side of the highway, but while coming back on the other side the tooth of the ripper, which Hannah testified was "out of the ground", struck and punctured the pipe line, resulting in the loss of 2,697 barrels of oil and aggregate damages of $9,252.16. Hannah's testimony was that the area around the pipe was "filled, so that he had no reason to rip there". The evidence established that Hannah, in the course of his employment by the defendants and while engaged in a grading operation on their behalf, negligently, as the trial court determined, permitted the equipment he was operating to strike and puncture the pipe line of the plaintiff, to its damage.

The "Comprehensive General Liability Policy" issued to the defendants by Aetna insured them against liability for property damage under "Coverage B". The policy, however, contained the following exclusions from such coverage:

"(j) under Coverage B, to injury to or destruction of any property arising out of * * * (2) the collapse of or structural injury to any building or structure due (a) to grading of land, excavation, borrowing, filling, back-filling, tunneling, pile driving, coffer-dam work or caisson work, * * *.

"(k) under Coverage B, to injury to or destruction of wires, conduits, pipes, mains, sewers or other similar property, or any apparatus in connection therewith, below the surface of the ground, if such injury or destruction is caused by and occurs during the use of mechanical equipment for the purpose of grading of land, paving, excavating, or drilling, or to injury to or destruction of property at any time resulting therefrom; * * *."

The trial court reached the following conclusions relative to the nonliability of Aetna under its policy:

"2. That the work being performed by defendants at the time and place of the casualty in question included the grading of land and excavation.

"3. That the mechanical equipment then and there being used by defendants' agent, servant and employee, Hannah, who was then and there within the scope of his employment by defendants and was then and there acting as their agent, servant and employee, was being used in the process of grading of land and excavation when damage to the underground pipe owned by the plaintiff was sustained.

"4. That, therefore, the casualty in question was within the terms and provisions of said exclusions in said policy of insurance."

■ It is argued on behalf of the appellants that neither of the "exclusions" upon which the court relied applies to the loss of oil as distinguished from the physical damage to the pipe line. We note that exclusion "(k)" eliminates from liability coverage not only injury to underground pipes from the use of mechanical equipment while being used for the purpose of grading, but also "injury to or destruction of property at any time resulting therefrom". Surely, oil is property, and one reasonably may believe that the loss of oil from the puncture of the pipe line in the instant case was "destruction of property resulting therefrom".

■ The conclusion of the trial court that the casualty in question was within the terms of the exclusions and not within the coverage of the policy, represents the considered views of an experienced Missouri federal judge as to what the Supreme Court of Missouri would probably hold, were this case before that court. Dierks Lumber & Coal Co. v. Barnett, supra, 221 F.2d 695, 697. The conclusion reached does no violence to any established principle of Missouri insurance law. It is the rule in Missouri, as elsewhere, that the clear and unambiguous language of a policy must be given its plain meaning. Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 101, 57 A.L.R. 615, 619; Massachusetts Bonding & Ins. Co. v. Julius Seidel Lumber Co., 8 Cir., 279 F.2d 861, 866. This Court has repeatedly held that, in a diversity case governed by state law, it will not reverse a trial judge who has reached a permissible conclusion with respect to a question of the applicable local law. See and compare: Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43; Citizens Insurance Co. of New Jersey v. Foxbilt, Inc., supra, page 643 of 226 F.2d; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734; Kansas City Operating Corp. v. Durwood, 8 Cir., 278 F.2d 354, 362 and cases cited.

■ Nothing urged upon us by the appellants demonstrates that the federal judge who tried this case either misconceived or misapplied the applicable law of Missouri in ruling that Aetna, under the evidence, was entitled to judgment dismissing the third party complaint.

The judgment appealed from is affirmed.

WOODROUGH, Circuit Judge (dissenting).

The question presented on this appeal is whether a costly accident suffered by the defendant highway construction contractors at 3:30 o'clock on the afternoon

of August 23rd, 1957 was covered by the liability policy then in force issued to them by the Aetna insurance company. Among their equipment the contractors had a tool used to break up land to a substantial depth for grading called a "ripper" and although the insuring clause of the policy agreed "to pay * * * all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property * * * caused by accident" a clause "k" of the policy excludes from its coverage "injury * * * to pipes * * * below the surface of the ground if such injury is caused by and occurs during the use of mechanical equipment for the purpose of grading of land * * *".

Immediately prior to the accident an employee of the contractors was using the ripper to grade land immediately adjacent to an area where an underground pipe line used for transporting oil crossed the highway. The contractors' employee was informed of and knew the area where the pipe line was located and it was not his purpose to, and he did not intend to, and he did not in fact use the ripper to grade the land in that area above the pipe. He desired, however, to use it for the purpose of grading land on the other side of the pipe line area and the accident occurred while he was transporting the ripper across the pipe line area.

Before he entered that area he raised the tooth of the ripper to the safety, inoperative, position above the surface of the ground so that the mechanical equipment could not be "used for the purpose of grading land", but whether he was negligent in not raising the tooth as high as he should have, or whether the ground was so rough that the movement in transportation threw the machine out of position and caused its tooth to enter the ground is not clear. The tooth did, however, make an unintended penetration of the ground solely as the result of accident and it ruptured the oil pipe.

It was the kind of accident the insurance covered—a happening not intended and not to be expected. The exclusion from the coverage by "k" so far as relevant here applied reasonably only to an injury to underground pipe caused by the use of the ripper for the purpose of grading land. It applied when the employee was using the tool to grade on either side of the pipe line area. Its terms forbid applying it to deny the insurance where the user put the tool into an inoperative position and was merely transporting the machine over land he did not purpose to grade with it.

It is noted that the conjunctive "and" is used in "k" so that it makes no exclusion from coverage unless the injury occurs not only *during* the use of the tool for grading, but also *by* the use of it for the purpose. Which plainly means that the operator must purpose or intend to be digging with the tool and not merely be transporting it when the accident happens. Happening as it did the accident was covered by the insurance policy.