**Richard B. LONG, et. al., Appellants,**

**v.**

**The SMEAD MANUFACTURING COMPANY, et. al., Respondents.**

**No. C2–85–1833.**

Court of Appeals of Minnesota.

March 18, 1986.

Review Denied May 29, 1986.

Claude M. Loewenthal, Loewenthal & Luck, Ltd., Minneapolis, for appellants.

Douglas J. Muirhead, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp and Brennan, Minneapolis, for respondents.

Heard, considered and decided by HUS-PENI, P.J., and FOLEY and NIEREN-GARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Richard B. Long appeals from the dismissal of his suit against The Smead Manufacturing Company, arguing the trial court erred (1) in applying the doctrine of *in pari delicto* since Long was not a wrongdoer, (2) in concluding the findings of the bankruptcy court established fraudulent conduct by Long, and (3) in failing to grant Long summary judgment on the issue of Smead's liability in the malicious prosecution claim. We affirm.

## FACTS

Appellant Richard B. Long owned and operated Advertising Associates, Inc. which provided advertising services for respondent Smead Manufacturing Company for the years 1963 to 1980. Smead sued Long for fraudulently billing for advertising services which were never provided. Long filed for bankruptcy and Smead brought an adversary proceeding against him in bankruptcy court objecting to the discharge of the debt claiming it was procured through fraud.

The bankruptcy court found that the debt was dischargeable under 11 U.S.C. § 727 (1982), and did not come within exception 11 U.S.C. § 523(a)(2)(A) (1982) for debts procured by fraud. It stated:

> Long's billing invoices to Smead for advertisements not placed with the publications and for a "markup" above the published rates for the advertisements which were placed was with the agreement, consent, authorization and knowledge of Ebba C. Hoffman.

Ebba C. Hoffman had been chief executive officer of Smead for the last 26 years. She and her two children are the sole owners of Smead. Hoffman, it was found,

> requested and authorized Advertising Associates, Inc., through its president, Richard B. Long, to render services unrelated to advertising agency customary services, or advertising services outside the scope of work contracted for and covered by the agreement of the parties. Such extraordinary services were performed by Long and Advertising Associates, Inc., in conformance with the request and authorization of Ebba C. Hoffman. Such extraordinary services continued and lasted for the duration of the business relationship of the parties from 1963 to April, 1980.

The bankruptcy court found that Long and Advertising Associates collected for these extraordinary services, "with the agreement, consent, authorization and knowledge of Ebba C. Hoffman," by billing in-

voices to Smead for advertisements not placed with publications and for a markup above the published rates.

The bankruptcy court concluded:

Plaintiff [Smead] has failed to prove that the alleged overbilling misrepresentations by debtor were intended to defraud the plaintiff.

Plaintiff has failed to prove that the plaintiff reasonably relied to its detriment on the alleged overbilling misrepresentations.

Smead's complaint was thus dismissed with prejudice.

Subsequently, Smead and Long stipulated a dismissal of Smead's state court action for fraud.

Richard B. Long and his wife, Mary Ann Long then commenced a lawsuit against The Smead Manufacturing Company and Ebba C. Hoffman asserting malicious prosecution, among other claims. Long moved for a partial summary judgment on the counts of his claim asserting malicious prosecution. Following a hearing, the trial court dismissed the suit, applying the doctrine of *in pari delicto*. Long appeals.

## ISSUES

Did the trial court properly apply the doctrine of *in pari delicto*, thus barring plaintiff from seeking judicial relief under the alleged facts?

## ANALYSIS

The trial court applied the doctrine of *in pari delicto* to hold that the suit commenced by appellant could not be heard by the court and must be dismissed. *In pari delicto* means:

In equal fault; equally culpable or criminal; in a case of equal fault or guilt. A person who is *in pari delicto* with another differs from a *particeps criminis* in this, that the former term always includes the latter, but the latter does not always include the former.

Black's Law Dictionary 711 (5th ed. 1979).

The trial court applied this doctrine, citing *State v. AAMCO Automatic Trans-*

*missions, Inc.,* 293 Minn. 342, 199 N.W.2d 444 (1972), for the principle that courts are reluctant to intervene in disputes between parties who are both wrongdoers in equal fault. The trial court also noted that *Kansas City Operating Corp. v. Durwood,* 278 F.2d 354 (8th Cir.1960), indicates that under this doctrine the law will leave such parties to a fraud where it finds them.

Long asserts that the doctrine of *in pari delicto* does not apply since he was not equally at fault with Smead, he only obtained reimbursement for his expenses, he did not gain by the parties' agreement. Long also asserts that the trial court erred in concluding that the findings of the bankruptcy court showed a pattern of fraudulent conduct by Long since Smead's president arranged for the billing practice and there was no detrimental reliance. Finally, Long argues any wrongdoing might bar an action on the billing agreement, but does not bar an action for malicious prosecution.

The leading Minnesota case on *in pari delicto* is *State v. AAMCO Automatic Transmissions, Inc.,* 293 Minn. 342, 199 N.W.2d 444 (1972). In *AAMCO,* appellant Kugler sued franchisor AAMCO, asserting destruction of his business after the state enjoined his and other AAMCO franchisees from deceptive advertising and sales practices. The jury found that AAMCO had supplied false, untrue, deceptive and misleading advertising and sales practices to Kugler, proximately causing substantial damages to him. The jury also found that Kugler had knowingly and willingly participated in such advertising and sales practices. The trial court concluded that Kugler and AAMCO were *in pari delicto* and dismissed their claims against each other. The Minnesota Supreme Court affirmed, stating:

We hold, in these circumstances, that the doctrine of *in pari delicto* was appropriately applied to bar a recovery by Kugler against AAMCO. This doctrine is based upon judicial reluctance to intervene in disputes between parties who are both wrongdoers in equal fault. Although usually applied to parties to an illegal

contract, 4 Dunnell, Dig. (3 ed.) § 1885, we think it should be just as applicable to tortious transactions based upon fraud or similar intentional wrongdoing. As stated in *Kansas City Operating Corp. v. Durwood,* 278 F.2d 354, 357 (8 Cir.1960): "Generally, anyone who engages in a fraudulent scheme forfeits all right to protection, either at law or in equity." The contributory fault of Kugler in the destruction of his own business is clear. However much it may be argued that his implication in the business methods of AAMCO was induced or compelled by the superior economic power of AAMCO and the absence of an equally acceptable business alternative for Kugler, his participation was, as the jury found, both knowing and willing. He did more than his franchise demanded * * *. [H]e developed his own technique of defrauding customers * * *. The degree of fraud may not be precisely measurable in the application of the principle of *in pari delicto,* but it is clear on this record that Kugler's fraud was no less than that of AAMCO.

*AAMCO,* 293 Minn. at 347–348, 199 N.W.2d at 448.

Long asserts the bankruptcy court finding, that Smead's debt was dischargeable because there was no fraud, is collateral estoppel here and prevents a finding of *in pari delicto.* We disagree. *AAMCO* doesn't require a finding of fraud. Instead, *AAMCO* bases its application of *in pari delicto,* upon the fact that the parties were "wrongdoers in equal fault." The doctrine may also apply whenever anyone "engages in a fraudulent scheme." *Kansas City Operating Corp. v. Durwood,* 278 F.2d 354, 357 (8th Cir.1960).

Here, the plan to bill personal expenses as though they were actually advertising expenses, defrauds outsiders relying on or examining Smead's records, preparing its taxes, or relying on Long's asserted gross sales. It is true no injury to any party has been proven. Presumably all of Smead's shareholders were privy to the "scheme." One purpose of *in pari delicto,* however, is to prevent the courts from getting thrust into the position of finding facts where the parties have devised a scheme to deceive outsiders. *See Kansas City,* at 357–58 ("[A]nyone who engages in a fraudulent scheme forfeits all right to protection, either at law or in equity." *Id.* at 357.) In such a case, the judicial system is thrust into the middle of a fraudulent scheme— forced to sort out truths and untruths in a make believe land. The doctrine thus insulates the courts, keeping them out of this awkward role. It is not solely designed to punish the wrongdoer.

In this case where malicious prosecution is alleged, the jury would be forced to evaluate the billing scheme of Long and Smead's president to determine, *inter alia,* whether the suit by Smead for fraudulent billing was brought without probable cause, and with malicious intent. *See McSweeney v. Maryland Casualty Co.,* 754 F.2d 271 (8th Cir.1985). The judicial system would be thrust into the position of evaluating the contrived advertising charges to find facts and determine issues. The public policy purposes behind the doctrine of *in pari delicto*—to insulate the judicial system from engaging in factfinding where the parties have engaged in a fraudulent scheme—applies here and bars the action for malicious prosecution.

None of the exceptions to the doctrine of *in pari delicto,* apply here. *See AAMCO,* 293 Minn. at 348, 199 N.W.2d at 448.

The other issues raised by Long are now moot.

## DECISION

Plaintiff's action for malicious prosecution is barred by the doctrine of *in pari delicto.*

Affirmed.